UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARBARA CORDI-ALLEN and JOHN ALLEN, Plaintiffs ) v. ) R. BARTLEY HALLORAN and R. BARTLEY HALLORAN, P .C., Defendants ) | CIVIL ACTION NO. 05-30083-MAP |

U.S. DISTRICT COURT DISTRICT OF MASS. FILED IN CLERK'S OFFICE 2006 APR -3 A 11: 24

## RENEWED MOTION TO VACATE JUDGMENT AND FOR ACCEPTANCE OF BRIEF IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 60(b) OF THE FEDERAL RULES OF PROCEDURE

1.    On March 16, 2006, Plaintiffs served a motion to vacate judgment and to allow the court

to consider Plaintiffs response to a motion for summary judgment. (copy attached as Exhibit One).

2.    That motion was denied on March 22, 2006 (which Plaintiffs' counsel received yesterday).

3.    Plaintiff hereby renews that motion for the reasons set forth in the prior motion and, for the

reasons, that:

    A.    The Defendant is not entitled to judgment as a matter of law on the motion papers.

    B.    The Decision on March 8, 2006, fails to comply with the requirements of Rule 56

        of the Federal Rules of Procedure.

    C.    **The Defendants' motion for summary judgment misrepresents the law of**

        **Connecticut.**

4.      To succeed on a Rule 60(b) motion, the movant must show that (1) the motion is

timely, (2) exceptional circumstances justify granting extraordinary relief, and (3) vacating the

judgment will not cause unfair prejudice to the opposing party. *See Teamsters, Chauffeurs,*

*Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 19-20

(1st Cir. 1992). In addition, the movant must show that granting the motion will not be an

"empty exercise" by demonstrating that the underlying claim for relief is likely to succeed on

the merits. *Id.* at 20.


5.      There is no dispute that the motion is timely filed under Rule 60(b).


6.      As explained in the previous motion, Plaintiffs' counsel has had exceptional

circumstances within the last few months and further Defendants' counsel failed to provide

documents as requested causing in part the failure to timely file. *Bateman v. United States*

*Postal Service et al.*, 231 F.3d 1220 (9th Cir., 2000) (finding "excusable neglect" under Rule

60(b) when attorney failed to respond to summary judgment motion, but then took immediate

actions for relief from judgment applying the standards in *Pioneer Investment Services Co., v.*

*Brunswick Assocs. Ltd Partnership*, 507 U.S. 74 (1993)).


7.      Finally, as explained in brief in this motion and in detail in the attached memorandum

in opposition to the motion for summary judgment (copy attached as Exhibit Two), Plaintiff

has a meritorious claim for breach of contract recognized under Connecticut law, and a

2

defense to the motion for summary judgment and, further, that the motion for summary judgment was improvidently granted.

8.     With respect to the decision being improvidently granted, Rule 56(e) requires that summary judgment only be issued if a motion for summary judgment demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

9.     Thus, even if unopposed the court is under an affirmative obligation to determine whether the moving party has demonstrated that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

10.     A district court may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days. *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) ("Under this provision it is clear that '[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'").

11.     The court must determine whether summary judgment is "appropriate," which means that it must assure itself that the moving party's submission shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c); *see also* Advisory Committee Note to Rule 56 ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.").

12.    Here, the court issued a two page ruling which provides:

> This is an action for legal malpractice. On February 17, 2006, Defendants filed a motion for summary judgment arguing that Count I should be dismissed because Plaintiffs suffered no harm as a matter of law, and that Counts II and III should be dismissed, based upon a violation of the statute of limitations and a failure to offer expert opinion. Rule 7.1 of the Local Rules of the United States District Court for the District of Massachusetts requires that all motions be opposed within fourteen days of service. Plaintiffs have offered no opposition to Defendants' Motion for Summary Judgment in violation of this rule.
>
> Having reviewed the motion, and finding the arguments contained in it compelling, and noting the lack of opposition from Plaintiffs, the court hereby ALLOWS Defendants' Motion for Summary Judgment (Docket No. 14) on all three counts of the case.

13.    Thus, the court appears to have issued judgment solely based on the fact that Plaintiffs failed to file a timely opposition rather than review the facts and law and determine whether an issue of material factual dispute existed preventing issuance of judgment as a matter of law.

14.    While counsel cannot speak to the mind of the court in making its decision, counsel believes that the court may have been relying solely on the representations of counsel as to the law of Connecticut which counsel for Plaintiffs believes was misrepresented to the court by counsel for Defendants.

4

15.    More particularly, both Counts I and II state that they are breach of contract claims for
failure to undertake specific actions as set forth in written contracts including specifically
division of the proceeds of any recovery on a personal injury claim (Count I) and to ensure that
Plaintiffs were represented at no cost in a worker's compensation proceeding (Count II).

16.    As explained more fully in the enclosed opposition to the motion for summary judgment,
Connecticut recognizes that attorneys may held liable to clients for breach of contract claims
which have a six year statute of limitations. *Stowe v. Smith*, 184 Conn. 194, 441 A.2d 81 (1981),
*Mac's Car City, Inc. v. DeNigris*, 18 Conn. App. 525, 559 A.2d 712, *cert. denied* 212 Conn. 807
(1989), *Hill v. Williams*, 74 Conn. App. 654, 813 A.2d 130 (Conn. App., 2003).

17.    In *Hill v. Williams*, 74 Conn. App. 654, 813 A.2d 130 (Conn. App., 2003), the court
specifically held that claims involving breaches of specific terms of a contract to provide legal
representation are subject to a six year statute of limitations.

18.    Here, Plaintiff alleged in the Complaint that Defendant signed a settlement statement in
which he "guaranteed that no attorneys fees payments will be charged to Barbara and John Allen
. . . and [they] will not be responsible for attorneys fees or expenses for the workers comp. case."
Complaint Paragraph 25 and  Exhibit Two, and Exhibit J to Summary Judgment Motion.

19.    Notwithstanding that contractual obligation, Halloran had himself removed as counsel

5

for the Plaintiff Barbara Cordi-Allen over her objections and she had to hired another attorney

which caused her to incur fees that Halloran promised she would not incur. Complaint Paragraph

26 and Count II.

20.    Consistent with these allegations Plaintiff Barbara Cordi-Allen's responses to

Interrogatory No. 2 specifically stated that her damages for the breach of contract in the worker's

compensation case (Count II) were as follows:

**INTERROGATORY NO.2**

State the basis for any damages you are seeking to recover from the Defendants in this

lawsuit, including an itemization of those damages.

**RESPONSE TO INTERROGATORY NO. 2**

\* \* \*

B.    Breach of Contract – Failure to Represent

When Mr. Halloran was originally retained by the Allens, he agreed to represent Ms.

Allen in her worker's compensation proceeding. He affirmed this obligation in the

accounting for the settlement with Delta Elevator. Mr. Halloran, however, did not

complete this obligation and Ms. Cordi-Allen has been required to incur the cost of

retaining another lawyer to represent her in the amount of at least $20,000.

Exhibit T to Motion for Summary Judgment at p. 5.[1]

---

[1] Ms. Cordi-Allens' deposition demonstrates that the fees were approximately $11,000.

6

21.    Thus, the essence of Plaintiffs' claim in Count II is that Defendant agreed to represent

Ms. Cordi-Allen to the completion of the worker's compensation action for compensation which

he received from the settlement with Delta Elevator and then failed to do so.


22.    This is a breach of contract claim.


23.    Apparently recognizing that the claim in Count II sounds wholly in contract, the

Defendants' counsel in their memorandum in support of their motion argue as follows:

> In Count II of the Complaint, plaintiffs allege that Halloran was in breach of
> contract by withdrawing as counsel for Barbara in the workers' compensation
> case. This is a claim for negligence cloaked as a breach of contract claim.

> > [A] breach of contract action against an attorney is, essentially, governed
> > by the same principles as a negligence action, and both are predicated on
> > the standard of care applicable to the attorney . . . an attorney does not, by
> > agreeing to represent or provide professional services to a client impliedly
> > contract to see the client's claim through to conclusion. To read an
> > attorney-client relationship to contain an implied promise to pursue a
> > claim to conclusion would lead to bizarre and untenable results. There
> > are conceivably many valid reasons why an attorney might decide, after
> > taking a case, to not pursue it to conclusion.

> *Celantano et al. v. Grudberg, et al.*, 76 Conn. App. 119, 125 (2003)

> Under the standards above, Count II sounds in negligence or legal malpractice,
> rather than breach of contract.

Summary Judgment Memo at pp. 5-6.


23.    The clear import of Defendant's argument is that the *Celantano* decision (copy attached

as Exhibit Three) holds that a claim for failure to continue a representation to its conclusion is a

negligence claim.

7

24.    This is a misrepresentation of the holding of *Celentano*.[2]

25.    **The *Celentano* decision is a breach of contract case, not a negligence case, against an attorney, and the issue which the court was addressing was whether expert testimony was required to determine whether there was a breach of contract.** *See Celentano* at 120 (The first paragraph of the *Celentano* decision begins: "This case concerns the failure of the plaintiffs to present expert testimony in a breach of contract action against their former attorney and his law firm . . . .")

26.    Furthermore, the *Celentano* court recognized in its decision that attorneys may make express promises to see a claim through to its conclusion." *Celentano* at 126.

27.    Thus, the decision which formed the basis of the Defendants' argument that Count II is a negligence claim simply does not support that position, but rather supports Plaintiffs' position that Defendants may bring a breach of contract action for failure to see the workers'

---

[2]The argument may well violate Rule 3.3 of the Massachusetts Rules of Professional Conduct which requires "Candor Toward The Tribunal." *See* Comment to Rule 3.3 (addressing representations regarding applicable law). Furthermore, the citation excludes the language which proceeds the quotation that unequivocally states that a breach of contract action can be brought in addition to a negligence action:

It is well settled that an attorney may be subject to a claim for breach of contract arising from an agreement to perform professional services. *See Mac's Car City, Inc. V. DeNigris*, 18 Conn. Ap.. 525, 530, 559 A.2d 712, *cert. Denied*, 212 Conn. 807, 563 A.2d 1356 (1989). In a claim such as this, "the client usually has the option to sue for either breach of an implied contract, negligence or both." 1 R. Mallen &J. Smith, Legal Malpractice (5th Ed. 2000) Sec. 8.7, p. 820.

*Celentano* at 124-125.

compensation case through to its conclusion.

28.     In particular, as shown by the Plaintiff's allegations and interrogatories, the crux of the

Count II claim is that Defendants had been compensated for representation in the workers'

compensation case and that Halloran had guaranteed that the Plaintiffs would have no further

attorneys fees in that matter.  The Plaintiffs claim that when he terminated his representation, he

obligated himself to pay for the fees of replacement counsel.

29.     Rule 60(b) provides that relief from a judgment can be granted:

> On motion and upon such terms as are just, the court may relieve a party or a
> party's legal representative from a final judgment, order, or proceeding for the
> following reasons: (1) **mistake, inadvertence, surprise, or excusable neglect**;
> (2) newly discovered evidence which by due diligence could not have been
> discovered in time to move for a new trial under Rule 59(b); (3) **fraud (whether
> heretofore denominated intrinsic or extrinsic), misrepresentation, or other
> misconduct of an adverse party**; (4) the judgment is void; (5) the judgment has
> been satisfied, released, or discharged, or a prior judgment upon which it is based
> has been reversed or otherwise vacated, or it is no longer equitable that the
> judgment should have prospective application; or (6) any other reason justifying
> relief from the operation of the judgment.

Emphasis supplied.

30.     Here, it appears that the March 8, 2006, decision was issued without meeting the

standards of Rule 56 which constitutes a "mistake" that warrants vacating the judgment so that a

decision applying the standards of Rule 56 is issued.

31.     Alternatively, the Defendants' counsel's extremely loose use of Connecticut precedent to

buttress its argument placed the court in the position of believing that a claim involving an

attorneys' withdrawal is a negligence claim under Connecticut law when, in fact, it is a contract

9

claim and a is basis for vacating the March 8, 2006, decision because of on the "misrepresentation, or other misconduct of an adverse party."

32.    Finally, Plaintiffs' counsel would like to reiterate as stated in his prior motion that his circumstances over the last three and one-half months have been extraordinary and have resulted in numerous delays in filing and confusion within his solo practice.

33.    More particularly, as explained in the prior motion, counsel for plaintiffs' house was wholly destroyed by fire on December 11, 2006, killing his two dogs and sparing his family, but destroying all but a few possessions.

34.    The following week, his wife's father underwent heart surgery and nearly died on Christmas Eve causing his wife, who is his office assistant, to spend the week following Christmas in her native Detroit.

35.    The motion was filed in mid-February approximately two months after the fire while counsel was in the process of putting his life back together and dealing with the insurance company for a claim which will be in excess of $700,000 including a personal property list of over 2,000 items.

36.    Within days of that motion being filed, counsel for Plaintiffs' wife was staying at his parents' condominium when the local sewer system backed up into the kitchen causing extensive damage and requiring immediate evacuation and assistance with his parents in their insurance

10

claim.

37.    Additionally and as explained in the prior motion for relief from judgment, counsel for Defendants was wholly uncooperative in returning original documents to counsel for Plaintiffs.

38.    Rule 60(b) also allows vacating a judgment for "mistake, inadvertence, surprise, or excusable neglect."

39.    In *Pioneer Inv. Servs. Co. V. Brunswick Ltd. Partnership*, 507 U.S. 380 (1993), the court addressed an attorneys inadvertent failure to file a proof of claim under an excusable neglect standard.

40.    The court held that "Congress plainly contemplated that the courts would be permitted, [when] appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388.

41.    In *Pioneer,* the Supreme Court held that when analyzing a claim of excusable neglect, courts should "tak[e] account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

42.    Here, Plaintiff simply asks that the court to vacate the judgment and allow the late filing

of a response to the motion for summary judgment.

43.    If the judgment should stand after considering the arguments of Plaintiff then the court can simply reissue the judgment and, in doing so, rectify any defects as to form.

44.    No prejudice will occur to the Defendants which is particularly true as they had not returned the documents which resulted in Plaintiffs' delay in filing a response.

45.    Furthermore, Plaintiffs do not contest the facts set forth by Defendant which will be established as a matter of law, but rather simply contest that the facts don't warrant judgment under the law.

46.    **REQUEST FOR ORAL ARGUMENT** – Counsel for Plaintiffs requests a hearing with oral argument to assist the court in deciding this motion.

WHEREFORE, Counsel for Plaintiffs hereby moves that the judgment issued on March 8, 2006, be vacated and that the attached opposition to motion for summary judgment of counsel be accepted for filing.

Paul Revere, III
(BBO 636200)
Law Offices of Paul Revere, III
297 North Street, Suite 336
Hyannis, Massachusetts 02601
508-778-7126

Dated: March 30, 2006

## Certification Pursuant To Local Rule 7.1(a)

Paul Revere, III, counsel of record for the Plaintiffs hereby certifies that on March 30, 2006, I

conferred by telephone with counsel for the Defendants in a good faith effort to resolve or narrow

the issue presented in this motion, as required by Local Rule 7.1(A)(1).


Signed under pains and penalties of perjury this 30th day of March, 2006.


Paul Revere, III


I hereby certify that a true copy of this motion was served upon the attorney of record for each
party by mail on March 30, 2006.


Paul Revere, III


13

**EXHIBIT ONE**

UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BARBARA CORDI-ALLEN and JOHN ALLEN, )<br>Plaintiffs )<br>)<br>)<br>v. )<br>R. BARTLEY HALLORAN and R. BARTLEY )<br>HALLORAN, P .C., )<br>Defendants )<br>) | CIVIL ACTION NO. 05-30083-MAP |

## EMERGENCY MOTION TO VACATE JUDGMENT
## AND FOR ORDER ALLOWING
## TIME TO RESPOND TO MOTION
## FOR SUMMARY JUDGMENT
## PURSUANT TO RULES 6(b) and 60(b) OF THE
## FEDERAL RULES OF PROCEDURE

1.    On February 17, 2006, Defendants served their motion for summary judgment.

2.    Counsel for Defendant called counsel for Plaintiff to make him aware of the motion on February 9, 2006.

3.    Counsel for Plaintiff for who is located on Cape Cod stated in that February telephone call that he **needed** to have the counsel for Defendant, who is located in Boston, return the **original** documents which the Plaintiffs had provided in response to a broad based document request in September, 2005, **to be able to respond to the motion for summary judgment**.

1

4.    Counsel for Defendant was aware that these documents were the only copies of the documents **and agreed to provide such documents via delivery service**.

5.    The originals were provided because counsel for Plaintiffs' August 18, 2005, response to the Defendants' document request stated that they would be made available at counsel for Plaintiffs' office of Cape Cod on September 23, 2005.

6.    After discussion, counsel for Plaintiffs agreed to deliver a large box containing the originals to Boston on September 22, 2005, as he was attending another deposition in Boston on that date on the condition that counsel for Defendant would either copy them, or review them and return the originals.

7.    Counsel for the Defendant without objection by counsel for Plaintiff held the documents and used them in two days of depositions of the Defendant Barbara Cordi-Allen on November 16 and 17, 2005.

8.    At the end of the deposition, counsel for Defendants stated that he would have the documents returned to counsel for Plaintiffs.

9.    Counsel also agreed that the deposition of Defendant R. Bartley Halloran would occur at some later date following a motion for summary judgment.

2

10.    On December 11, 2006, counsel for Plaintiffs' home was destroyed by fire killing his two dogs, but thankfully not injuring him, his wife, or two children. _See_ http://cbs4boston.com/topstories/local-story-345184130.html.

11.    As stated above, during the February 9, 2006, telephone call, counsel for Plaintiff stated that he needed the documents to respond to the motion for summary judgment.

12.    Counsel for Plaintiff provided his new mailing address via e-mail to counsel for Defendant on or about February 11, 2006.

13.    The new mailing address was necessitated as counsel for Plaintiffs had used his home address for receiving mail and, since it was destroyed, he was no longer living there.[1]

14.    On or about March 6, 2006, counsel for Plaintiffs and counsel for Defendants spoke via telephone.

15.    Counsel for Plaintiffs again stated to counsel for Defendants that he had not received the documents and would be unable to provide a response to the motion for summary judgment until the documents had been sent.

---

[1]Though irrelevant to this motion, it should be noted that counsel for Plaintiff's copy of the deposition transcript of Ms. Cordi-Allen was destroyed by that fire.

3

16.    Counsel for Defendants again stated that he would provide the original documents.

17.    On March 8, 2006, this court entered an order and judgment for Defendants stating specifically that Plaintiffs had never responded to the motion.

18.    Counsel for Plaintiffs was unaware of this decision due to it not being sent to him electronically.

19.    On March 14, 2006, counsel for Defendants' secretary called counsel for Plaintiffs and informed him that the documents were being delivered on that day.

20.    No mention was made that the documents were being returned now as judgment had entered.

21.    Having received the documents one month after counsel was informed that they would be returned in February, counsel for Plaintiffs intended to call counsel for Defendants and request he agree to the late filing of a response as the failure to respond in a timely basis was the result of counsel for Defendants' failing to provide documents as requested and for which he had in his possession since September, 2005, and for more than three months after the deposition of Plaintiff Barbara Cordi-Allen.

22.    The Memorandum and Order notes that counsel for Plaintiffs did not file an opposition.

4

23.    Rule 6(b) of the Federal Rules of Civil Procedure allows an extension of time based upon

a showing of excusable neglect.

24.    Rule 60(b) provides that relief from a judgment can be granted:

On motion and upon such terms as are just, the court may relieve a party or a party's
legal representative from a final judgment, order, or proceeding for the following
reasons: (1) **mistake, inadvertence, surprise, or excusable neglect**; (2) newly
discovered evidence which by due diligence could not have been discovered in time
to move for a new trial under Rule 59(b); (3) **fraud (whether heretofore
denominated intrinsic or extrinsic), misrepresentation, or other misconduct of
an adverse party**; (4) the judgment is void; (5) the judgment has been satisfied,
released, or discharged, or a prior judgment upon which it is based has been reversed
or otherwise vacated, or it is no longer equitable that the judgment should have
prospective application; or (6) any other reason justifying relief from the operation
of the judgment.

Emphasis supplied.

25.    Here, counsel for Plaintiff failed to file an opposition for two reasons.

26.    First, since the fire that destroyed his home in December, counsel for Plaintiffs' life has

been essentially a mess including filing and negotiating insurance claims and trying to maintain

some semblance of a legal practice and keep his family life on track.

27.    In the past month, counsel for Plaintiff has finalized his submission of a claim to the

insurance company for the destruction of essentially all non-metallic items in his home above the

basement and is reaching the final stages an agreement that the cement foundation is the only

5

recoverable portion of the housing structure and, in sum, involving total claims (structure and contents) in excess of $700,000.

28.    Counsel for Plaintiffs was aware that a response was due by early March, but expected to file agreed motion with counsel for Defendant extending that date as counsel for Defendant had been informed at least twice that counsel for Plaintiff believed that such documents would be necessary to prepare a response and counsel for Plaintiff did not believe that a decision on the motion would be rendered so expeditiously.

29.    Thus, counsel for Plaintiff has demonstrated "mistake, inadvertence, surprise, or excusable neglect" for not filing a motion for extension of time before the deadline for filing an opposition and for relief from the judgment.

30.    Furthermore, Rule 60(b) allows relief from a judgment on the basis of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."

31.    **While counsel for Plaintiffs does not at this time have any reason to believe that the failure to return the documents earlier was the result of a strategic decision on the part of counsel for Defendants or otherwise done for a nefarious purpose**, the wording of the rule is sufficiently broad for the court to find that, while the actions of counsel for Defendants were not intentionally fraudulent or otherwise sanctionable, the circumstances surrounding the request for

6

documents could arise to negligent, innocent, or otherwise unintentional misrepresentation or conduct which would allow vacating the judgment to allow Plaintiffs to be heard.

32.    Furthermore, Local Rule 56.1 requires that: "Copies of all referenced documentation shall be filed as exhibits to the motion or opposition."

33.    By failing to return the documents, counsel for Defendants placed counsel for Plaintiffs in a position making it difficult if not impossible to respond to the motion for summary judgment within the confines of the rule.[2]

34.    In summary, counsel for Plaintiffs did not file a request to extend time because he believed that such an extension would be readily granted by an agreed motion as counsel for Defendants had not provided the documents which he had promised.

35.    It is expected that counsel for Defendants will make some argument along the lines that "deadlines" are "deadlines"; counsel for Plaintiff has not demonstrated "excusable neglect" or another basis for an extension and relief from judgment; and counsel missed some discovery deadlines in this matter.

36.    In reviewing this argument, the court should consider that counsel for Defendants' record

---

[2]Again, counsel for Plaintiffs states that he has no reason to believe at this time that counsel for Defendants intentionally failed to return such documents to gain advantage over counsel for Plaintiffs.

on returning the documents.

37.    Finally, counsel for the Plaintiff is not requesting that the court vacate the judgment and permanently reverse the decision resulting automatically in a full trial.

38.    Rather, counsel for Plaintiff simply asks that the court allow counsel for Plaintiff to file an opposition to the motion for summary judgment within 14 days of receipt of the documents so that the court can consider Plaintiffs' viewpoints on the summary judgment motion.

WHEREFORE, Counsel for Plaintiffs hereby moves that the judgment issued on March 8, 2006, be vacated and that Counsel for Plaintiff be provided until March 28, 2006, to respond to the motion for summary judgment.

_____
Paul Revere, III
(BBO 636200)
Law Offices of Paul Revere, III
297 North Street, Suite 336
Hyannis, Massachusetts 02601
508-778-7126

Dated: March 16, 2006

8

## Certification Pursuant To Local Rule 7.1(a)

Paul Revere, III, counsel of record for the Plaintiffs hereby certifies that on March 16, 2006, I conferred by telephone with counsel for the Defendants in a good faith effort to resolve or narrow the issue presented in this motion, as required by Local Rule 7.1(A)(1).

Signed under pains and penalties of perjury this 16th day of March, 2006.

/s/

Paul Revere, III

I hereby certify that a true copy of this motion was served upon the attorney of record for each party by mail on March 16, 2006.

/s/

Paul Revere, III

9

**EXHIBIT TWO**

UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BARBARA CORDI-ALLEN and JOHN ALLEN, )<br>Plaintiffs )<br> )<br>v. )<br>R. BARTLEY HALLORAN and R. BARTLEY )<br>HALLORAN, P .C., )<br>Defendants ) | CIVIL ACTION NO. 05-30083-MAP |

## OPPOSITION TO MOTION FOR
## SUMMARY JUDGMENT

### Introduction

This matter involves a three count complaint alleging breach of contract (Counts I and II) and breach

of fiduciary duty (Count III). On February 17, 2006, Defendants served a motion for summary

judgment arguing primarily that the claims were essentially tort claims and were governed by a three

year statute of limitations. As more fully explained in its "Emergency Motion To Vacate Judgment

and for Order Allowing Time to Respond to Motion for Summary Judgment Pursuant to Rules 6(b)

and 60(b) of the Federal Rules of Procedure" (the "Relief Motion"), Plaintiffs had not filed a

response to the motion because Defendants had failed to return original documents that Plaintiffs had

provided in response to a document request even though counsel for Defendants were aware that

counsel for Plaintiffs believed that he needed such documents to respond to the summary judgment

motion. The Relief Motion requested that Plaintiffs be allowed until March 28, 2006, to respond to

the summary judgment motion.

## Summary of Argument

Defendants correctly argue that legal malpractice actions in Connecticut are governed by a three year statute of limitations. However, Connecticut courts have recognized that the relationship between an attorney and client also has contractual elements and that actions based on the attorneys fees breach of contract are subject to the six year statute of limitations in General Statutes Sec. 52-576, rather than the three year statute of limitations in General Statutes Sec. 52-577. Here, the plaintiffs' claim are for breach of contract and are subject to the six year statute of limitations.

## I.    Summary Judgment Standard And Burdens

Defendants' brief accurately sets forth the standard for granting summary judgment. Here, Defendants have moved for summary judgment arguing essentially three points: (i) Plaintiffs failed to file its complete within the applicable statute of limitations; (ii) Plaintiffs were not damaged by the failure to follow the contractual provisions of the written representation contract; and (iii) Plaintiffs have failed to offer expert testimony to support their claim. With respect to the affirmative statute of limitations defense, Fed. R. Civ. P. 8(c), Defendants bear the burden of proof of each of the elements of the defense and, as such, must demonstrate that there is no genuine issue of material fact as to each of the elements of that defense. With respect to claim of failure to distribute proceeds pursuant to the settlement agreement, Plaintiffs bear the burden of demonstrating that there is a genuine issue of material fact that they have suffered damages. Finally, with respect to the claim of that Plaintiffs have failed to offer expert testimony, the Defendants bear the burden of demonstrating that expert testimony is necessary to establish their case.

## II.     This Action Is Governed By Connecticut Law

Plaintiffs agree that this action is governed by Connecticut law.


## III.     Count II Was Filed Within The Applicable Six Year Statute Of Limitations

### A.     Count II Is A Breach Of Contract Action

In an argument that misrepresents the pleadings and the state of Connecticut law, Defendants argue

that Count II is a negligence claim couched in terms of contract. However, Connecticut law has

long recognized that breach of contract actions may be brought against an attorney in addition to tort

claims where the attorney breached the terms of a contractual agreement with his client. Here, the

Plaintiffs have alleged that the Defendants agreed that Plaintiff Barbara Cordi-Allen would not be

responsible for any attorneys fees for the worker's compensation proceeding and that he breached

that agreement. Therefore, Count II states a claim for breach of contract.


Since at least 1981, the Supreme Court of Connecticut has recognized that not every claim against

an attorney is a tort claim. *Stowe v. Smith*, 184 Conn. 194, 441 A.2d 81 (1981). *See also Mac's Car

City, Inc. v. DeNigris*, 18 Conn. App. 525, 559 A.2d 712, *cert. denied* 212 Conn. 807 (1989)

(contractual claim may be maintained against attorney, copy attached). In *Hill v. Williams*, 74 Conn.

App. 654, 813 A.2d 130 (Conn. App., 2003) (copy attached), the court addressed the issue of

whether a complaint pled negligence or breach of contract by an attorney and the application of a

statute of limitations defense. The court reversed the granting of a summary judgment explaining:

> If the complaint sounds in breach of contract, the six year statute of limitations
> provided by General Statutes Sec. 52-576 is applicable. However, if the complaint
> merely pleads legal malpractice or other claims sounding in tort, the applicable

3

statute of limitations would be at most three years . . . .

* * *

The plaintiff argues, however, that her complaint also alleges breach of contract and, therefore, Sec. 52-576 provides the appropriate statute of limitations. We agree with plaintiff. Although not artfully pleaded, parts of her complaint sound in breach of contract.

Our Supreme Court has recognized that not all claims against an attorney are necessarily actions in tort. . *Stowe v. Smith*, 184 Conn. 194, 441 A.2d 81 (1981); *Robbins v. McGuiness*, 178 Conn. 258, 261-262, 423 A.2d 897 (1979). In the present case, the complaint goes beyond being merely "couched in the language of tort . . . ." *Shuster v. Buckley*, 5 Conn. App. 473, 478, 500 A.2d 240 (1985).

The plaintiff, in her complaint, describes the matters for which the defendant was hired and the dates on which the parties created the relevant agreements. Specifically, on March 27, 1993, the defendant agreed "to represent plaintiff in a civil action against her ex-husband." On April 14, 1993, the defendant agreed "to represent the plaintiff in her family case to appeal her divorce, obtain accurate support and obtain sole custody of the Hill children." And finally, on May 3, 1993, the defendant agreed to represent the plaintiff in her legal malpractice suit against her former divorce attorney." The plaintiff then describes her complaint as a "breach of contract lawsuit."

At several points in the complaint, the plaintiff refers not only to the defendant's failure to proceed in several actions, but also to the defendant's refusal to take certain actions in furtherance of the matters for which the defendant had been hired.

* * *

Use of the word "refuse" imports an intentional act rather than some inadvertence or negligent act or omission on the part of the defendant in breach of the agreements between the parties.

*Id.* at 657-660.

Having concluded that the complaint alleged breach of contract, the court reversed the granting of summary judgment.

4

Here, the court is faced with similar circumstances. The Plaintiffs complaint alleges that the Plaintiffs

and Defendants entered into an agreement. Complaint Paragraph 9 and Exhibit One (and Exhibit C

to Motion for Summary Judgment). The agreement provided a specific formula for dividing the

proceeds of any judgment or settlement. Complaint Paragraph 14.    The Defendant R. Bartley

Halloran presented a division of fees received from the settlement to Plaintiffs in a settlement

statement that did not comply with the terms of the agreement. Complaint Paragraphs 17 and 18. The

settlement statement resulted in Halloran receiving in excess of the amount which he was entitled

under the agreement and the Plaintiffs receiving nothing from the settlement breaching the terms of

that contractual agreement. Complaint Paragraphs 20-24 and Count I.


Further, at the time of the settlement statement, the Defendant agreed that and "guaranteed that no

attorneys fees payments will be charged to Barbara and John Allen . . . and [they] will not be

responsible for attorneys fees or expenses for the workers comp. case." Complaint Paragraph 25 and

Exhibit Two, and Exhibit J to Summary Judgment Motion. Notwithstanding that contractual

obligation, Halloran had himself removed as counsel for the Plaintiff Barbara Cordi-Allen over her

objections and she had to hired another attorney which caused her to incur fees. Paragraph 26 and

Count II.


Consistent with these allegations Plaintiff Barbara Cordi-Allen's responses to Interrogatory No. 2

specifically states that she has two breach of contract claims which relate to the division of proceeds

(Count I) and failure to represent in the worker's compensation case (Count II) as follows:


5

**INTERROGATORY NO.2**

State the basis for any damages you are seeking to recover from the Defendants in this lawsuit, including an itemization of those damages.

**RESPONSE TO INTERROGATORY NO. 2**

The Complaint contains essentially three claims for damages on behalf of Barbara Cordi-Allen: (I) breach of contract relating to the distribution of proceeds from the settlement; (ii) Breach of contract for failure to represent Ms. Cordi-Allen in the worker's compensation proceeding; and (iii) breach of fiduciary duty.

A.     Breach of Contract – Distribution of Proceeds

Ms. Cordi-Allen and the Defendants entered into an agreement wherein the Defendants were to receive "fees of thirty three and one third percent (33 1/3%) of the recovery . . . after deduction of liens, costs and expenses including payback of any Worker's Compensation benefits." The gross settlement from the suit against Delta Elevator was $235,000.00. Mr. Halloran presented and accounting which provided him with thirty three and one third of the total settlement, not one third of the settlement after payment of liens, costs and expenses. The accounting was inconsistent with the terms of the retention agreement and resulted in the Allens receiving zero dollars from the settlement whereas Mr. Halloran received $78,333.33. If the distribution had been calculated in accordance with the agreement. Mr. Halloran would be entitled to $26,111.11 and the Allens to $52,222.22.

B.     Breach of Contract – Failure to Represent

When Mr. Halloran was originally retained by the Allens, he agreed to represent Ms. Allen in her worker's compensation proceeding. He affirmed this obligation in the accounting for the settlement with Delta Elevator. Mr. Halloran, however, did not complete this obligation and Ms. Cordi-Allen has been required to incur the cost of retaining another lawyer to represent her in the amount of at least $20,000.

Exhibit T to Motion for Summary Judgment at p. 4-5.[1]

Thus, the allegations of Counts I and II sound in breach of contract under Connecticut law. The

allegations do not state that the Defendants were negligent, did not use due diligence, or did not

comply with professional standards. Rather, they claim that the Defendants did not comply with

---

[1]Based upon Ms. Cordi-Allen's deposition, it appears that the legal fees incurred are approximately $10,000.

6

express terms of a contract.

Apparently recognizing that Count I alleges a pure contractual violation, the Defendants make no attempt to even dismiss Count I on the statute of limitations basis.

With respect to Count II, the Defendants simply ignore the language of the complaint and interrogatory responses and suggest that Ms. Allen is claiming that "Halloran was in breach of contract by withdrawing as counsel for the worker's compensation case." Motion at p. 5. In an extremely questionable argument, the Defendants state as follows:

> This is a claim for negligence cloaked as a breach of contract claim.

>> [A] breach of contract action against an attorney is, essentially, governed by the same principles as a negligence action, and both are predicated on the standard of care applicable to the attorney . . . an attorney does not, by agreeing to represent or provide professional services to a client impliedly contract to see the client's claim through to conclusion. To read an attorney-client relationship to contain an implied promise to pursue a claim to conclusion would lead to bizarre and untenable results. There are conceivably many valid reasons why an attorney might decide, after taking a case, to not pursue it to conclusion.

> *Celantano et al. v. Grudberg, et al.*, 76 Conn. App. 199, 125 (2003)

> Under the standards above, Count II sound in negligence or legal malpractice, rather than breach of contract.

Summary Judgment Memo at pp. 5-6.

The clear import which Defendant counsel was attempting to attain from this quotation is that *Celantano* decision held that a claim for failure to continue a representation to its conclusion is a negligence claim. **However, the *Celantano* decision makes no such holding. The decision is a breach of contract case, not a negligence case and the issue which the court was addressing was whether expert testimony was required to determine whether there was a breach of contract.** In particular, the *Celantano* decision begins: "This case concerns the failure of the plaintiffs to present

expert testimony in a breach of contract action against their former attorney and his law firm . . . ."

Additionally, prior to the language quoted by the Defendants, the *Celentano* decision provides:

> It is well settled that an attorney may be subject to a claim for breach of contract arising from an agreement to perform professional services. *See Mac's Car City, Inc. V. DeNigris*, 18 Conn. Ap.. 525, 530, 559 A.2d 712, *cert. Denied,* 212 Conn. 807, 563 A.2d 1356 (1989). In a claim such as this, "the client usually has the option to sue for either breach of an implied contract, negligence or both." 1 R. Mallen &J. Smith, Legal Malpractice (5th Ed. 2000) Sec. 8.7, p. 820.

*Celentano* at 124-125.

Thus, the decision which form the basis of the Defendants' argument simply does not support their position that all claims against attorneys for withdrawing from representation are breach of contract cases..

Further, the complaint in this matter does not seek to require Halloran to represent Ms. Allen in the worker's compensation case. Rather, Halloran accepted money in the settlement statement and "guaranteed that no attorneys fees payments will be charged to Barbara and John Allen . . . and [they] will not be responsible for attorneys fees or expenses for the workers comp. case." Complaint Paragraph 25 and Complaint Exhibit Two. When he did so, he agreed that in exchange for the payment in the settlement statement, he would be responsible for the costs of the worker's compensation case. When he withdrew it was incumbent upon him to pay the Allens for the costs of their new attorney.

**B.    Plaintiffs Filed Count I Within The Six Year Statute of Limitations**

As discussed above, Counts I and II are breach of contract claims and are subject to a six year

8

statute of limitations. There is no dispute that the settlement statement was signed in December, 2000. *See* Defendants Concise Statement of Material Facts at para. 15. Furthermore, there is no dispute that the Defendant Halloran was allowed to withdraw from representing Plaintiff Cordi-Allen in July, 2001. *Id.* at para 27. Since these are within six years of the filing of the complaint, the action was filed in a timely manner.

### C.    Expert Testimony Is Not Necessary To Support Plaintiffs' Claims In Counts II and III At This Time

#### 1.    Count II Does Not Require Expert Testimony

Count II is a breach of contract claim for failure to represent the Plaintiff Barbara Cordi-Allen at no cost or to pay for the representation of other counsel. There is no issue of standard of care as all parties agree that Defendant Halloran did not complete his representation in the worker's compensation matter. The only issue is whether he should pay for the fees of another attorney as he agreed that the Plaintiffs would incur no fees for the worker's compensation action. This is not a matter requiring expert testimony. Therefore, Count II should not be dismissed.

#### 2.    Count III Should Not Be Dismissed

Count III is a breach of fiduciary duty claim. In her response to Interrogatory #2 (Exhibit T to Motion for Summary Judgment at p. 4-5), she explained the basis of her claim as follows:

> C.    Breach of Fiduciary Duty
>
> When Mr. Halloran agreed to represent Barbara Cordi-Allen, he was placed into a position of trust and confidence. He had a duty to pursue her interests and not others including his own. Mr. Halloran represented to Ms. Cordi-Allen that her claims was worth millions of dollars and that he had the skill and political connections to successfully pursue her claims. Mr. Halloran breached his fiduciary duty in a number

of ways. First, Mr. Halloran failed to investigate the gross negligence of the City of Hartford in allowing the elevator which injured Ms. Cordi-Allen to operate for a number of years without regularly inspections and licensing, and after a history of malfunction. Such gross negligence would have allowed Ms. Cordi-Allen to pursue her claims outside of the worker's compensation forum. Mr. Halloran did not pursue those claims as he was chairman of the Capital City Economic Development Authority Board and did not want to pursue claims against the City as it would impact his actions on the Board. Second, Mr. Halloran breached his fiduciary duty by not fully pursuing claims against Delta Elevator because he did not want to cause problems with the ongoing negotiations with United Technology Corporation, the corporate parent of Delta, that was purchasing the naming rights for a football stadium to be used by the New England Patriots at the Adraien's Landing development which was overseen by Capital City Economic Development Authority. Mr. Halloran's own secretary Jean Burrill informed Ms. Cordi-Allen that he "cares more about Adriaien's Landing than your lawsuit." Third, Mr. Halloran breached his fiduciary duties by calculating the funds which Ms. Cordi-Allen would receive from settlement of the claim against Delta in a manner which benefitted Mr. Halloran to the detriment of Ms. Cordi-Allen. That is he received nearly $80,000 from the settlement and Ms. Cordi-allen received zero dollars. Furthermore, in bullying Ms. Cordi-Allen into signing the settlement, Mr. Halloran misrepresented the amount which Ms. Allen would receive by accepting a settlement and also the amount she might receive if she went to trial on her claim. In particular, Mr. Halloran placed his interests before Ms. Cordi-Allen when he informed Ms. Cordi-Allen that her lifetime of disability was now only worth $500,000 in a jury verdict which was less than the millions of dollars he represented when he was retained. Furthermore, Halloran misrepresented the amount of money which she would receive from a settlement if she waived her worker's compensation rights by representing that the attorneys fees and expenses would be $85,000 and that she would receive $150,000, when, in fact, he knew that he intended to charge her fees and expenses in excess of $108,000, resulting in her receiving less than $127,000 if she accepted the settlement and waived her worker's compensation claim. In addition, he also misrepresented that she would receive only $70,000 from a $500,000 verdict without waiving the worker's compensation claim when in fact Ms. Cordi-Allen would receive more than $180,000. In doing so, Mr. Halloran abused his position of trust and breached his fiduciary duty so that he could get paid without having to try a case which he had obligated himself to try on behalf of Ms. Cordi-Allen. Finally, Mr. Halloran breached his fiduciary duty by using his influence to paint a picture of Ms. Cordi-Allen to the Worker's Compensation Board as an unstable individual who was trying to abuse the system when, in fact, Ms. Cordi-Allen simply was requesting that Halloran vigorously represent her and also questioning the decisions of Halloran who had breached his fiduciary duties by lying to Ms. Cordi-Allen about the value of the settlement and options available to her in the action against Delta. These breaches of duty have cost Ms. Cordi-Allen at least three million dollars of lost earnings, pain and suffering, and disability which she might otherwise have recovered.

Thus, her breach of fiduciary duty claim involves five issues: (i) failure to pursue claims against

Hartford due to his position on the Capital City Economic Development Authority ("CCEDA"); (ii)

10

failure to fully pursue claims against Delta Elevator as it was a subsidiary of a company for which the CCEDA was trying to obtain funds for a stadium; (iii) misrepresentations regarding the value of a settlement and litigation to Ms. Cordi-Allen; and (iv) making representations to the worker's compensation Board that Ms. Cordi-Allen was unstable.

While expert testimony is often required to establish a breach of a fiduciary duty such testimony is not required when "there is present such an obvious and gross want of care and skill that the neglect [to meet the standard of care] is clear even to a layperson." *Celentano* v. *Grudberg*, 76 Conn. App. 119, 126, 818 A.2d 841, cert. denied, 264 Conn. 904, 823 A.2d 1220 (2003). "The relationship between an attorney and his client is highly fiduciary in its nature and of a very delicate, exacting, and confidential character, requiring a high degree of fidelity and good faith." *Matza* v. *Matza*, 226 Conn. 166, 184, 627 A.2d 414 (1993). Professional negligence implicates a duty of care, while breach of a fiduciary duty implicates a duty of loyalty and honesty. *See Edwards v. Thorpe*, 876 F. Supp. 693, 694 (E.D. Pa. 1995); *Bukoskey v. Walter W. Shuham, CPA, P.C.*, 666 F. Supp. 181, 184 (D. Alaska 1987).

At this stage of the litigation, the court is deciding whether summary judgment should be granted and the facts should be construed in a manner favorable to the Plaintiffs who are the non-moving parties. Here, Plaintiffs have alleged that Halloran either acted for his benefit rather than his client or took actions which were obviously detrimental to his client. These allegations are a sufficiently clear breach of a duty of loyalty and honesty that a lay person can understand and expert testimony is unnecessary to establish a breach.

## IV.    Plaintiffs Have Suffered A Harm Because Of The Breach Of Contract In Count I

In an argument bordering on bizarre, the Defendants argue that Plaintiffs suffered no harm do to the Defendants distribution of the proceeds of the settlement with Delta Elevator. The essence of the Defendants' argument was that the worker's compensation lien would have taken one hundred percent of any money due the Allens. The problem with Defendants' argument is the lien is a claim against the Plaintiffs including any compensation which they receive third parties relating to Ms. Cordi-Allens' accident. More particularly, the Plaintiffs would have virtually no remaining lien using the figures on page 15 of Defendants' memorandum if the funds had been distributed in accordance with the representation agreement. That is the full $235,000 would have gone to paying the lien rather than $78,333.00 going to Defendant Halloran. As it stands now, the Allens still have an over $100,000 lien against them. In contrast, if the agreement had been followed that lien would have been substantially reduced. Under these circumstances, the court should not grant summary judgment as there exist a dispute as to whether the Allens were damaged by the distribution of funds from the settlement with Delta Elevator.

Paul Revere, III
(BBO 636200)
Law Offices of Paul Revere, III
297 North Street, Suite 336
Hyannis, Massachusetts 02601
508-778-7126

Dated: March 30, 2006

12

I hereby certify that a true copy of this ooposition was served upon the attorney of record for each

party by mail on March 30, 2006.


Paul Revere, III

**712** Conn.          **559 ATLANTIC REPORTER, 2d SERIES**

The judgment of the Appellate Court is affirmed.



18 Conn.App. 525

⌐525MAC'S CAR CITY, INC.

v.

Nicholas E. DeNIGRIS et al.

No. 6996.

Appellate Court of Connecticut.

Argued March 9, 1989.

Decided May 30, 1989.

Former client brought action against former attorneys alleging, inter alia, breach of representation agreement. Attorneys moved for summary judgment. The Superior Court, Judicial District of Hartford-New Britain at New Britain, Spada, J., granted motion, and appeal was taken. The Appellate Court, Stoughton, J., held that: (1) assertion that defendants breached their representation agreement clearly stated claim on contract; (2) claim was governed by statute of limitations for contracts and not for torts; and (3) substantial issues of material fact existed precluding summary judgment under statute requiring action on oral contract to be brought within three years.

Error; further proceedings.

**1. Limitation of Actions ⚖182(3)**

Statute of limitation defense must be specifically pleaded.

**2. Limitation of Actions ⚖180(1)**

Trial court could not raise sua sponte statute of limitations as bar to complaint alleging breach of professional standard of

care due former client by attorneys. C.G.S.A. § 52–577; Practice Book 1978, § 164.

**3. Trial ⚖138**

Interpretation of pleadings is question of law.

**4. Action ⚖27(1)**

Assertion that defendants breached their representation agreement clearly stated claim in contract.

**5. Action ⚖27(1)**

Claim that former attorneys breached their representation agreement with former client was governed by statute of limitations for contracts, not tort statute of limitations.

**6. Judgment ⚖181(7)**

Substantial issues of material fact existed as to whether former client had fully performed his obligation under contract or whether representation contract with former attorneys was executory contract, precluding summary judgment under statute requiring that actions on oral contract be brought within three years. C.G.S.A. § 52–581.

⌐526Alexandra Davis, Hartford, for appellant (plaintiff).

Joseph F. Skelley, Jr., with whom, on the brief, was Alan Wein, Hartford, for appellees (defendant).

Before DuPONT, C.J., and STOUGHTON and NORCOTT, JJ.

STOUGHTON, Judge.

The plaintiff appeals the trial court's granting of summary judgment in favor of the defendants.[1] The plaintiff contends that the trial court improperly rendered summary judgment on a ground not raised in the pleadings.

⌐527On November 7, 1986, the plaintiff brought an action against the named defendant, an attorney, and his law firm. In its first count, the plaintiff alleged, inter alia,

---

1. The plaintiff's complaint was brought in two counts. The plaintiff conceded that its second count, which alleged a cause of action based

upon negligence, was barred by General Statutes § 52–577. This claim, therefore, is not at issue on this appeal.

IES

client by attorneys. C.G.
Practice Book 1978, § 164.

on of pleadings is question

1)

hat defendants breached
ion agreement clearly stat-
ract.

1)

former attorneys breached
ition agreement with for-
governed by statute of limi-
racts, not tort statute of

>181(7)

issues of material fact ex-
her former client had fully
bligation under contract or
entation contract with for-
vas executory contract, pre-
ry judgment under statute
actions on oral contract be
n three years.  C.G.S.A.

Davis, Hartford, for appel-

elley, Jr., with whom, on the
Wein, Hartford, for appel-
).

DNT, C.J., and
and NORCOTT, JJ.

N, Judge.

appeals the trial court's
nmary judgment in favor of
l.[1]  The plaintiff contends
court improperly rendered
nent on a ground not raised
rs.

nber 7, 1986, the plaintiff
ion against the named defen-
ey, and his law firm.  In its
plaintiff alleged, inter alia,

ce, was barred by General Stat-
This claim, therefore, is not at
ppeal.

that on or about July 28, 1980, the Ameri-
can National Bank brought suit against it
for the amount due on a promissory note.
It was alleged that between July 28, 1980,
and August 5, 1980, the plaintiff's presi-
dent, John McCall, had met with the named
defendant and had retained the defendants
to represent Mac's Car City, Inc., in the law
suit, and that the defendants had agreed to
do so.  On or about August 6, 1980, the
defendant law firm entered an appearance
on behalf of the plaintiff in the suit
brought by American Savings Bank.  The
plaintiff alleged that the defendants failed
to defend the bank's lawsuit and that on
October 14, 1980, a default for failure to
plead was entered against the plaintiff.
The plaintiff alleged that the named defen-
dant failed to take any action to open the
default, that on December 1, 1980, the trial
court rendered judgment in favor of Ameri-
can Savings Bank in the total amount of
$22,765.75, and that the named defendant
failed to take any action to open or set
aside the judgment.  Paragraphs nineteen
and twenty of the first count of the com-
plaint read as follows:

"19.  The defendants breached their rep-
resentation agreement with the plaintiff in
that they did not defend the suit brought
by American Savings Bank, they did not
seek to obtain the release of the attach-
ment on the plaintiff's property, and they
did not timely seek to recover the plain-
tiff's losses from American Savings Bank.

"20.  As a result of the defendants'
breach of agreement, the plaintiff suffered
the losses set forth in paragraph 15 above
and is no longer able to recover these loss-
es from American Savings Bank as well as
treble damages in accordance with C.G.S.
§ 52-568."

[528]The defendants' amended answer de-
nied paragraphs nineteen and twenty, and,
by way of special defenses, alleged that
they were retained for a limited purpose,
and that the first count was barred by
General Statutes § 52-581.[2]

**2.** General Statutes § 52-581 provides in perti-
nent part: "ACTION ON ORAL CONTRACT TO BE BROUGHT
WITHIN THREE YEARS. (a) No action founded upon
any express contract or agreement which is not
reduced to writing, or of which some note or

On April 7, 1988, the trial court granted
the defendants' motion for summary judg-
ment.  The trial court stated: "In this case,
the plaintiff's claim is based upon the al-
leged breach of a professional standard of
care, not the breach of a contract.  Un-
equivocally, the plaintiff's cause of action,
if any, accrued on December 1, 1980; there-
fore, the plaintiff's claim is barred by the
applicable statute of limitations, General
Statutes (Rev. to 1987) § 52-577.  Accord-
ingly, defendants' motion for summary
judgment is granted."

The plaintiff claims that the trial court
erred in applying General Statutes
§ 52-577 to bar the cause of action alleged
in its complaint.  The defendants have
presented, as an alternate ground upon
which the judgment may be affirmed, the
claim that the cause of action is barred by
General Statutes § 52-581, as alleged in
their special defense.

I

[1, 2]  A statute of limitations defense
must be specially pleaded.  Practice Book
§ 164.  General Statutes § 52-577 is a pro-
cedural statute and is waived if not plead-
ed.  *Orticelli v. Powers*, 197 Conn. 9, 15–
16, 495 A.2d 1023 (1985); *L.G. DeFelice &
Son, Inc. v. Wethersfield*, 167 Conn. 509,
513, 356 A.2d 144 (1975).  "In deciding a
motion for summary judgment, the trial
[529]court is limited to considering the plead-
ings, affidavits, and other documentary
proof submitted by the parties."  *Orticelli
v. Powers*, supra, 197 Conn. at 15, 495 A.2d
1023.  Since the defendants did not plead
General Statutes § 52-577 as a defense to
the first count of the complaint, it was
error for a trial court to raise it sua sponte
to bar the first count of the complaint.  See
*Id.*, at 16–17, 495 A.2d 1023.

II

[3]  Summary judgment is appropriate
"if the pleadings, affidavits and any other

memorandum is not made in writing and signed
by the party to be charged therewith or his
agent, shall be brought but within three years
after the right of action accrues."

**714** Conn.        **559 ATLANTIC REPORTER, 2d SERIES**

proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384; *Yanow v. Teal Industries, Inc.* 178 Conn. 262, 268, 422 A.2d 311 (1979). Interpretation of the pleadings is a question of law. *Cahill v. Board of Education,* 198 Conn. 229, 236, 502 A.2d 410 (1985); *Sauerwein v. Bell,* 17 Conn.App. 697, 702, 556 A.2d 613 (1989).

[4] Although the complaint does not expressly use the word "contract," a fair and reasonable construction of the phrase "the defendants breached their representation agreement" clearly states a claim in contract. See *Fuessenich v. DiNardo,* 195 Conn. 144, 150–51, 487 A.2d 514 (1985).

[5] The trial court stated the issue in the case to be whether a plaintiff in a legal malpractice action could rely on an alleged breach of contract in order to extend the statute of limitations. It further stated that the question to be decided was "whether the breach of contract claim is viable."

The trial court based its decision to render summary judgment on the premise that, under our decision in *Shuster v. Buckley,* 5 Conn.App. 473, 500 A.2d 240 (1985), a claim against an attorney, even though couched in the language of contract, is actually a claim |₅₃₀of malpractice and therefore controlled by the three year statute of limitations for actions founded upon tort. That case, however, does not stand for the proposition that all claims against attorneys must necessarily be construed as tort claims. In *Shuster v. Buckley,* supra, at 478, 500 A.2d 240, we found that the tort statute of limitations applied because the complaint in question was couched in the language of tort rather than contract. Our Supreme Court has recognized an action in contract against an attorney. See *Stowe v. Smith,* 184 Conn. 194, 198–99, 441 A.2d 81 (1981); see also *Robbins v. McGuinness,* 178 Conn. 258, 261–62, 423 A.2d 897 (1979).

A physician may be subject to a claim for breach of contract arising from an agreement to perform professional services; see *Bria v. St. Joseph's Hospital,* 153 Conn. 626, 220 A.2d 29 (1966); and there seems to be no reason for treating claims against attorneys differently. It was error to apply the tort statute of limitations to the plaintiff's claim in contract. "Where two distinct causes of action arise from the same wrong, each is controlled by the statute of limitations appropriate to it." *Perzanowski v. New Britain,* 183 Conn. 504, 506, 440 A.2d 763 (1981).

### III

[6] The defendants have presented as an alternative ground for affirming the judgment their claim that the cause of action alleged in the first count of the complaint is barred by General Statutes § 52–581.

It cannot be determined from the record whether the plaintiff had fully performed his obligation under the contract or whether this was an executory contract. See *Tierney v. American Urban Corporation,* 170 Conn. 243, 248–49, 365 A.2d 1153 (1976). Therefore, summary judgment based upon General Statutes § 52–581 is inappropriate because there is a genuine |₅₃₁issue as to whether this statute is applicable. This question must be resolved by further proceedings. See *Esposito v. Wethered,* 4 Conn.App. 641, 644, 496 A.2d 222 (1985).

There is error; the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other Judges concurred.



RIES

ıg in light of this Court's
*te v. Ramsay,* 146 Vt. ——,
1985). In so ordering, we
erial information in a PSI
:ual and verified by the pre-
BA Standards for Criminal
1(c) (2d ed. 1980).

*cated. Remanded for re-*
*ore a different judge.*

[KEY NUMBER SYSTEM]

WESSON v. CITY OF MILFORD    Conn.  **505**
Cite as 498 A.2d 505 (Conn.App. 1985)

5 Conn.App. 369

**Janice WESSON**

v.

**CITY OF MILFORD.**

**No. 2935.**

Appellate Court of Connecticut.

Argued June 17, 1985.

Decided Sept. 24, 1985.

Clarification Denied Oct. 30, 1985.

Wife of injured employee sought to recover independently of the Workers' Compensation Act for a negligently inflicted loss of consortium. The Superior Court in the Judicial District of Ansonia-Milford, Kulawiz, J., granted employer's motion to strike, and wife appealed. The Appellate Court, Donald T. Dorsey, J., held that: (1) action wherein wife of injured employee sought to recover for negligently inflicted loss of consortium resulting from alleged negligence of employer, though characterized as being independent of the Workers' Compensation Act, was nevertheless derivative of injured husband's cause of action and, hence, was barred by exclusivity of remedy provision, and (2) statute granting immunity to employers from loss of consortium suits by spouses of workers injured in accidents arising out of and in course of their employment bears a rational relationship to a legitimate state purpose and is not violative of due process clauses of State and Federal Constitutions.

No error.

**1. Workers' Compensation ⟐2084, 2142, 2145**

All rights and claims between employers and employees, or any representatives or dependents of such employees arising out of personal injury or death sustained in course of employment, have been abrogated by exclusivity of workers' compensation remedy. C.G.S.A. § 31–284(a).

**2. Workers' Compensation ⟐2144**

Rule applicable when it is possible to show that the injury to the spouse was such an independent violation of a duty that its abrogation was not contemplated by the exclusive remedy provision has no application in a case where the wrong complained by the spouse is rooted in time, place and circumstances to the employee's accidental compensable injury. C.G.S.A. § 31–284(a).

**3. Workers' Compensation ⟐2142, 2145**

Statute limiting an employer from being held liable in any action for damages on account of personal injuries sustained by an employee arising out of and in course of employment or on account of death resulting from personal injury so sustained [C.G.S.A. § 31–284(a)] is clear and unambiguous in its exclusion or abolition of claims and rights between employer and employees or any representatives or dependents of employees arising out of personal injury or death sustained in course of employment.

**4. Workers' Compensation ⟐2144, 2145**

Action wherein wife of injured employee sought to recover for negligently inflicted loss of consortium resulting from alleged negligence of employer, through characterized as being independent of Workers' Compensation Act, was nevertheless derivative of injured employee's cause of action and, as such, was barred by statute [C.G.S.A. § 31–284(a)] prohibiting an action for damages on account of personal injury sustained by an employee arising out of and in course of employment or on account of death resulting from personal injury so sustained.

**5. Workers' Compensation ⟐2144**

Enactment of exclusivity of remedy provision [C.G.S.A. § 31–284(a)] prior to time Connecticut recognized a cause of action for loss of consortium did not preclude conclusion that wife of injured employee was otherwise barred from seeking damages for a negligently inflicted loss of consortium resulting from alleged negligence of employer.

**6. Constitutional Law ⚖301(4)**
**Workers' Compensation ⚖19**

Statute granting immunity to employers from loss of consortium suits by spouses of workers injured in accidents arising out of and in course of their employment [C.G.S.A. § 31–284(a)] bears a rational relationship to a legitimate state purpose and is not violative of due process clauses of State and Federal Constitutions. C.G.S.A. Const. Art. 1, §§ 8, 10; U.S.C.A. Const. Amend. 14, § 1.

Christopher B. Carveth, Milford, with whom, on brief, was Gerald F. Stevens, Milford, for appellant (plaintiff).

Michael P. Del Sole, New Haven, for appellee (defendant).

Before HULL, DALY and DONALD T. DORSEY, JJ.

DONALD T. DORSEY, Judge.

The complaint alleged that Robert W. Wesson was injured while working at his employment with the city of Milford on April 1, 1980. The plaintiff is the wife of Wesson and seeks damages independently of the Workers' Compensation Act for a negligently inflicted loss of consortium resulting from the alleged negligence of the defendant. The defendant filed a motion to strike the complaint predicated on General Statutes § 31–284(a). The plaintiff concedes in her brief that Wesson was covered by chapter 568 of the General Statutes, the Workers' Compensation Act, and has re-

ceived medical and disability benefits under that act. She also concedes that her husband has no independent right of action against the defendant and that, as to his injury and losses, his exclusive remedy was and is workers' compensation. The trial court decided the motion on the assumption that the plaintiff meets the definition of "dependent" as defined in General Statutes § 31–275(4).[1] This assumption was necessary for a construction of General Statutes § 31–284(a).[2] Subsequently, on November 17, 1983, the plaintiff responded to a request for admission by admitting that, on April 1, 1980, she was a dependent of Wesson as defined in General Statutes § 31–275(4).

The trial court considered the defendant's motion to strike to be grounded on the theory that General Statutes § 31–284 precluded an independent tort cause of action by a dependent of a covered employee for any accidental injury to an employee occurring during the course of, and arising out of the employment of the employee.

The trial court noted that the plaintiff, while recognizing the weight of authority against her position, relied primarily on decisions from two jurisdictions, Massachusetts and New Hampshire. The court distinguished the Connecticut exclusive remedy statute; General Statutes § 31–284(a); from the statutes in effect in those states and granted the defendant's motion to strike. Judgment was thereafter rendered for the defendant, whereupon the plaintiff appealed.

1. General Statutes § 31–275(4) provides " 'Dependent,' except as provided in section 31–308b, means a member of the injured employee's family or next of kin who was wholly or partly dependent upon the earnings of the employee at the time of the injury."

2. General Statutes § 31–284(a) provides: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that

compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits."

ES

d disability benefits under
so concedes that her hus-
dependent right of action
ndant and that, as to his
his exclusive remedy was
compensation. The trial
motion on the assumption
f meets the definition of
efined in General Statutes
is assumption was neces-
uction of General Statutes
bsequently, on November
untiff responded to a re-
ion by admitting that, on
was a dependent of Wes-
n General Statutes § 31–

t considered the defend-
strike to be grounded on
General Statutes § 31–284
ependent tort cause of ac-
ent of a covered employee
al injury to an employee
the course of, and arising
oyment of the employee.

noted that the plaintiff,
g the weight of authority
ition, relied primarily on
o jurisdictions, Massachu-
lampshire. The court dis-
onnecticut exclusive reme-
eral Statutes § 31–284(a);
s in effect in those states
e defendant's motion to
t was thereafter rendered
t, whereupon the plaintiff

ill not be paid when the per-
been caused by the wilful and
ct of the injured employee or
on. All rights and claims be-
and employees, or any repre-
dendents of such employees,
sonal injury or death sustained
employment as aforesaid are
nan rights and claims given by
ided nothing herein shall pro-
yee from securing, by agree-
employer, additional benefits
er for such injury or from en-
ement for additional benefits."

The issue presented by this appeal is whether a spousal dependent is barred by General Statutes § 31–284(a) from bringing an independent cause of action for loss of consortium predicated on an injury which was compensable under the Workers' Compensation Act.

The plaintiff contends that because the exclusive remedy provision, General Statutes § 31–284(a), was enacted in 1913 at a time when the common law right of loss of consortium was not recognized in Connecticut; see *Hopson v. St. Mary's Hospital*, 176 Conn. 485, 408 A.2d 260 (1979); it cannot be construed to abolish a right not then in existence. The plaintiff also asserts that such a construction would violate due process of law. Conn. Const., art. I §§ 8, 10; U.S. Const., amend. XIV § 1.

The defendant argues that General Statutes § 31–284 does bar a spousal dependent from maintaining a cause of action for loss of consortium based on an accidental injury to an employee covered under the Workers' Compensation Act. The defendant also contends that the equal protection clauses of the United States and Connecticut constitutions do not guarantee the presentation of an action for loss of consortium when the spouse's injury occurs in a workplace setting.

"We first must examine the applicable standard of review on a motion to strike. The motion to strike; Practice Book § 151; replaced the demurrer in our practice. Its function, like that which the demurrer served, is to test the legal sufficiency of a pleading. Practice Book § 152. The motion to strike, like the demurrer, admits all facts well pleaded. The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them; if facts provable under the allegations would support a defense or a cause of action, the motion to strike must fail. *Alarm Applications Co. v. Simsbury Volunteer Fire Co.*, 179 Conn. 541, 545, 427 A.2d 822 (1980). A motion to strike admits facts only. It does not admit legal conclusions

or the truth or accuracy of opinions stated in the pleadings. *McAdam v. Sheldon*, 153 Conn. 278, 282, 216 A.2d 193 (1965). We must examine the complaint, assuming the truth of all well-pleaded facts, to determine whether the plaintiff, under each count, has stated a legally sufficient cause of action." *Greene v. Metals Selling Corporation*, 3 Conn.App. 40, 41–42, 484 A.2d 478 (1984).

[1] The Workers' Compensation Act is the exclusive remedy for injuries sustained by an employee "arising out of and in the course of his employment." General Statutes § 31–284(a). All rights and claims between employers and employees, or any representatives or dependents of such employees arising out of personal injury or death sustained in the course of employment are abolished, other than rights and claims given by that chapter. *Velardi v. Ryder Truck Rental, Inc.*, 178 Conn. 371, 375, 423 A.2d 77 (1979).

[2] "Under the working of most 'exclusive remedy' clauses [such as § 31–284(a) ], any common-law right of a husband or wife to sue for loss of the wife's or husband's services and consortium ... is barred. In rare and unusual circumstances, however, it may be possible to show that the injury to the spouse ... was such an independent violation of duty that its abrogation was not contemplated by the exclusive remedy provision." 2A Larson, The Law of Workmen's Compensation § 66.00. These rare and unusual circumstances involve a truly independent breach of a duty toward a spouse often occurring at a different time and within a different context than the underlying accidental injury to the employee. This theory has no application to the case at hand since the wrong complained of by the plaintiff is rooted in time, place and circumstances to her employee husband's accidental compensable injury.

The types of exclusive liability statutes vary from state to state. The Massachusetts statute relied upon by the plaintiff provides that the employee, by coming

within the act, waives *his* common law rights. Massachusetts General Laws, c. 152, § 24 (1965). Other states have laws specifying that the employer's liability shall be exclusive or that he shall have no liability whatsoever. The New York law, N.Y. Workmen's Comp. Law, § 11 (1968), excludes actions by employees, personal representatives, husbands, parents, next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of injury or death. 2A Larson, *supra*, § 66.10.

**[3]** Section 31–284(a) is not as detailed as the New York statute but it is clear and unambiguous in its exclusion or abolition of claims and rights between employer and employees, or any representatives or dependents of said employees arising out of personal injury or death sustained in the course of employment. Every word in a legislative enactment is presumed to have meaning. *State ex rel. Kennedy v. Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974). "[C]ourts do not torture words to import ambiguity where the ordinary meaning leaves no room for it." *Heffernan v. Slapin,* 182 Conn. 40, 46, 438 A.2d 1 (1980).

*Hopson v. St. Mary's Hospital, supra,* 176 Conn. 494, 408 A.2d 260, tells us that "because a consortium action is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." In *Hopson,* the court noted a general consensus that where possible the consortium claim should be joined with the claim for personal injury. Id. In a situation such as this, where the injured worker is excluded from the courts and the injured spouse is excluded from the workers' compensation forum, such practicalities designed to avoid double recovery are not possible.

3.  We deem it unnecessarily burdensome to cite the cases from thirty-six jurisdictions found in the defendant's brief which, under varying workers' compensation statutes, have deter-

**[4]** The landmark case of *Hitaffer v. Argonne Co.,* 183 F.2d 811, 815 (D.C.Cir.), cert. denied, 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950), stated that "[i]nvasion of the *consortium* is an independent wrong directly to the spouse so injured." (Emphasis in original.) It is crystal clear, however, that in Connecticut a consortium action is derivative of the injured spouse's cause of action. *Hopson v. St. Mary's Hospital, supra.*[3] In *Greene v. Metals Selling Corporation, supra,* the trial court granted a motion to strike the fourth count of a wrongful death claim initiated by the administratrix of the estate of Everett Greene, Jr. The decedent was killed in an industrial accident and the plaintiff pursued a common law action for the wrongful death of her husband on the basis of the alleged wilful and wanton misconduct of the defendant corporate employer. The fourth count of her complaint sought recovery for a loss of consortium by the plaintiff wife individually. The appellate court found no error and sustained the trial court's decision to strike the entire complaint. In its decision, the court, citing *Hopson v. St. Mary's Hospital, supra,* stated that a consortium action is derivative of the injured spouse's cause of action. In view of these cases, the plaintiff's position that the injury suffered by the wife was a wrong independent of the injury to the husband cannot be maintained. Since the injury to the spouse of the employee is derivative in nature, it is barred by the sweeping language describing the employer's immunity. General Statutes § 31–284(a). 2A Larson, *supra,* § 66.20, suggests that this sweeping language seems to indicate a legislative intention actually reflected in the majority rule.

**[5]** The plaintiff argues that the immunity provided by this section applies only to rights that were in existence at the time the Workers' Compensation Act was enacted in 1913. She reasons that since her

mined that loss of consortium, being derivative of the worker's rights, cannot constitute the basis of an independent action.

righ
reco
*son*
not
tion

As
muni
cent
exter
al St
denie
ries
tional
by the
lished
such
and H
gave
strue
except
nent t
in this
*Minga*
491 A.

Ther
lature
abolish
causes
consort
necticu
brief th
gally p
without
supra, §
jority o
vived co
tive acti
in origir

"The
police po
principle
compens
constitut
*nese,* 14
(1957).
such legi
ture of th
ture, the
the mean
251, 129

case of *Hitaffer v.* | 811, 815 (D.C.Cir.), | 852, 71 S.Ct. 80, 95 | d that "[i]nvasion of | independent wrong | so injured." (Em- | is crystal clear, how- | cut a consortium ac- | :he injured spouse's | *pson v. St. Mary's* | *Greene v. Metals* | supra, the trial court | rike the fourth court | :laim initiated by the | : estate of Everett | dent was killed in an | id the plaintiff pur- | tion for the wrongful | l on the basis of the | anton misconduct of | rate employer. The | mplaint sought recov- | ortium by the plaintiff | The appellate court | sustained the trial | trike the entire com- | on, the court, citing | *Hospital,* supra, stat- | action is derivative of | cause of action. In | the plaintiff's position | red by the wife was a | of the injury to the | naintained. Since the | e of the employee is | , it is barred by the | lescribing the employ- | neral Statutes § 31– | supra, § 66.20, sug- | oing language seems to | : intention actually re- | ty rule.

argues that the immu- | . section applies only to | existence at the time | :nsation Act was enact- | :easons that since her

onsortium, being derivative | nts, cannot constitute | ent action.

right to sue for loss of consortium was not recognized in Connecticut until 1979; *Hopson v. St. Mary's Hospital,* supra; it could not have been abolished by legislative action in 1913.

As noted earlier in this opinion, the immunity section is unambiguous. In a recent case the Supreme Court declined to extend an exception to this section; General Statutes § 31–284(a); which would have denied the immunity to employers for injuries to employees resulting from "intentional" or "wilful" or "reckless" violations by the employee of safety standards established pursuant to federal and state laws such as the federal Occupational Safety and Health Administration Act. The court gave several reasons for declining to construe § 31–284 to permit a further judicial exception to the statute. One reason pertinent to this decision is "that to do so would in this case usurp the legislative function." *Mingachos v. CBS, Inc.,* 196 Conn. 91, 106, 491 A.2d 368 (1985).

There is no logical reason why the legislature in 1913 could not have intended to abolish prospective common law derivative causes of action, such as actions for loss of consortium, not then recognized in Connecticut. The plaintiff has argued in her brief that such a presently recognized legally protected interest cannot be deprived without due process of law. 2A Larson, supra, § 66.20, notes that in the great majority of cases such restrictions have survived constitutional attack since the derivative actions barred were not constitutional in origin.

"The legislature in the exercise of its police power can alter or abolish accepted principles of common-law liability to pay compensation for injuries without violating constitutional mandates." *Pierce v. Albanese,* 144 Conn. 241, 250, 129 A.2d 606 (1957). "Constitutional justification for such legislation must be found in the nature of the problem confronting the legislature, the purpose to be accomplished, and the means adopted to accomplish it." Id., 251, 129 A.2d 606. "'A statute does not

constitute a denial of the equal protection of the laws merely because it extends to some persons privileges denied to others, or imposes restrictions or liabilities on some but not on others. [Absent a suspect classification, or invidious discrimination, such] discriminations render legislation void where they are arbitrary or unreasonable, but not where they are based on real differences ... and are reasonable in extent.'" *Silver v. Silver,* 108 Conn. 371, 378, 143 A. 240 (1928), aff'd, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). "The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault...." *Jett v. Dunlap,* 179 Conn. 215, 217, 425 A.2d 1263 (1979). "In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." *Mingachos v. CBS, Inc.,* supra, 196 Conn. 97, 491 A.2d 368. The plaintiff is unable to persuade the court that the Connecticut statute, General Statutes § 31–284(a), does not bear a rational relationship to a legitimate state purpose and is not based on reasons related to that end.

Under the common law, a wife had no legal claim for the services or society of her husband. *Marri v. Stamford Street R. Co.,* 84 Conn. 9, 78 A. 582 (1911). Connecticut first recognized this right in 1979 when *Marri* was overruled by *Hopson v. St. Mary's Hospital,* supra. If the right to sue for loss of consortium is a common law right, the legislature may abolish it. If it is a constitutional right to sue, article first, § 10 of the Connecticut constitution curtails the legislative right to abolish it. If the right to sue for loss of consortium is a constitutionally established common law right or a right extant at the time of the adoption of article first, § 10 of the constitution, the legislature may not abolish the right entirely but may legislate a reasonable alternative to such right. It is clear from *Hopson v. St. Mary's Hospital,* su-

**510**  Conn.          **498 ATLANTIC REPORTER, 2d SERIES**

pra, that the right to sue for loss of consor-tium by a wife is not a constitutionally incorporated common law right or a consti-tutional right. Hence, it may be changed at the will or even the whim of the legisla-ture. See *Gentile v. Altermatt*, 169 Conn. 267, 283–84, 363 A.2d 1 (1975), appeal dis-missed, 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 631 (1976).

[6] Accordingly, the court is not per-suaded that General Statutes § 31–284, by granting immunity to employers from loss of consortium suits by the spouses of work-ers injured in accidents arising out of and in the course of their employment, violates either the due process clause of the federal or state constitutions or article first, § 10 [4] of the Connecticut constitution.

Concluding as we do, that the right to sue for loss of consortium, by the wife of an injured employee, for damages on ac-count of personal injury sustained by an employee arising out of and in the course of his employment is a derivative right, we must conclude that it is abolished by § 31–284(a).

There is no error.

In this opinion the other Judges con-curred.



40 Conn.Sup. 312

**Barbara C. BLOCK**

v.

**Genevieve C. CARRIER et al.**

No. 081287.

Superior Court of Connecticut,
Judicial District of New London.

April 26, 1985.

Declaratory judgment was sought that interest of testator's wife in certain proper-

ty was life estate with fee remainder to testator's daughter, or in the alternative, that wife held property as trustee on be-half of testator's daughter. Testator's wife filed motion to strike the complaint as legally insufficient for failing to state grounds upon which relief could be grant-ed. The Superior Court, Judicial District of New London, Schaller, J., held that statute limiting time for granting administration or proving will, upon which motion to strike was based, was inapplicable so that motion to strike had to be denied.

Order accordingly.

**1. Pleading** ⟞360

Motion to strike complaint as legally insufficient for failing to state grounds upon which relief can be granted admits all well-pleaded facts, which are construed in manner most favorable to pleader. Prac-tice Book 1978, § 152(1).

**2. Pleading** ⟞360

Upon motion to strike complaint as le-gally insufficient for failing to state grounds upon which relief can be granted, court may consider only those grounds raised in motion. Practice Book 1978, § 152(1).

**3. Pleading** ⟞360

Statute relied upon in support of mo-tion to strike, C.G.S.A. § 45–257d, limiting time for granting administration or proving will, did not apply where complaint did not seek administration or proving of will, but sought injunctive relief and determination of parties' interest in real property; thus, court had to deny motion to strike com-plaint as legally insufficient for failing to state grounds upon which relief could be granted. Practice Book 1978, § 152(1).

**4. Lis Pendens** ⟞20

Motion to discharge lis pendens had to be denied where no order and summons was attached. C.G.S.A. § 52–325a(a).

---

**4.**  Conn. Const., art. I § 10 provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputa-tion, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

Norman Lezotte. The court instructed in relevant part: "In summary, then, if you find [that] the state has proved beyond a reasonable doubt that the defendant intentionally . . . inflicted bodily injury on Norman Lezotte, then the state has proved this element [§ 53a–101 (a)(2) ] of the crime of burglary in the first degree. Thus, if you find beyond a reasonable doubt [that] the defendant, one, entered into the apartment unlawfully, and, two, that at the time he entered that apartment, his intent was to commit a crime, the crime of larceny, and, three, in the course of committing the offence, he intentionally . . . inflicted . . . bodily injury on Norman Lezotte, your verdict would be guilty . . . ."

In charging on the crime of assault of a victim sixty years of age or older in the second degree, the court stated that there must be an intent "to physically injure another person." It also charged that there must be "an intent to cause physical injury . . . and that the defendant must have caused such injury . . . by means of a dangerous instrument."

The court also charged on intent in connection with the crime of robbery in the first degree. The court instructed: "You must find that the state has proven beyond a reasonable doubt . . . that the defendant in the course of committing a larceny . . . used physical force upon another . . . for the purpose of preventing or overcoming resistance to the taking of the property." The court in discussing larceny, elements of which are included in both robbery and burglary in this case, reiterated that the defendant must wrongfully take property with the intention of depriving its possessor or owner of possession.

We conclude that the jury was not misled and that the entire instruction in this case is more closely akin |₅₅₀to those instructions given in *State v. Francis,* 246

Conn. 339, 358–59, 717 A.2d 696 (1998), *State v. Austin,* 244 Conn. 226, 232, 710 A.2d 732 (1998), and *State v. Prioleau,* 235 Conn. 274, 322, 664 A.2d 743 (1995). In those cases, by giving other proper instructions, the trial courts lessened the risk of jury confusion about the two types of statutory intent in the crimes with which the defendants in those cases were charged.

The instructions as a whole in those cases and in the present case make it clear that the state had to prove beyond a reasonable doubt that the defendant had the intent to cause the specific results involved in the crimes with which he was charged. See *State v. Jaynes,* 36 Conn.App. 417, 430, 650 A.2d 1261 (1994), cert. denied, 233 Conn. 908, 658 A.2d 980 (1995). The defendant is not entitled to a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.



---

74 Conn.App. 654

|₆₅₄**Luba N. HILL**

v.

**John R. WILLIAMS, et al.**

No. 22149.

Appellate Court of Connecticut.

Submitted on Briefs Oct. 31, 2002.

Decided Jan. 28, 2003.

Client brought action against her former attorney seeking damages based upon various legal theories which sounded in tort and contract. The Superior Court, Ju

358–59, 717 A.2d 696 (1998), *ustin*, 244 Conn. 226, 232, 710 998), and *State v. Prioleau*, 235 322, 664 A.2d 743 (1995).  In s, by giving other proper in- the trial courts lessened the y confusion about the two types ry intent in the crimes with defendants in those cases were

tructions as a whole in those in the present case make it clear tate had to prove beyond a rea- bubt that the defendant had the ause the specific results involved mes with which he was charged. *v. Jaynes*, 36 Conn.App. 417, 1.2d 1261 (1994), cert. denied, 233 3, 658 A.2d 980 (1995).  The de- not entitled to a new trial.

lgment is affirmed.

opinion the other judges con-



74 Conn.App. 654

654 **Luba N. HILL**

v.

ohn R. **WILLIAMS, et al.**

No. 22149.

pellate Court of Connecticut.

mitted on Briefs Oct. 31, 2002.

Decided Jan. 28, 2003.

ent brought action against her for- orney seeking damages based upon legal theories which sounded in l contract. The Superior Court, Ju- dicial District of Stamford–Norwalk, Mintz, J., entered summary judgment for attorney, and client appealed. The Appel- late Court held that client's tort claims against her former attorney were time barred.

Reversed in part and remanded.

**1. Pleading ⟷34(1)**

Whenever language of the pleadings fails to define clearly the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties.

**2. Motions ⟷39**

Although a judge should not lightly depart from a prior ruling on a motion before the same or a different judge, the prior ruling is not binding.

**3. Judgment ⟷186**

Where trial court denied attorney's initial motion for summary judgment on former client's tort claims "without preju- dice," trial court acted properly in recon- sidering attorney's motion for summary judgment, particularly since attorney's counsel was not able to attend the hearing to argue the first motion for summary judgment.

**4. Attorney and Client ⟷129(1)**
   **Limitation of Actions ⟷55(3)**

Former client's tort claims against her former attorney were time barred, since client commenced her claims more than four years after discharging attorney, and client's claims of negligence and reckless, wanton, or wilful misconduct were gov- erned by two year limitations period and client's claims for intentional tort were governed by three year limitations period. C.G.S.A. §§ 52–577, 52–584.

**5. Attorney and Client ⟷129(1, 2)**
   **Limitation of Actions ⟷50(3)**

Although former client's complaint against her former attorney pleaded vari- ous tort claims which were governed by either three or two year limitations period and which were time barred because client's action was brought more than four years after discharging attorney, client's complaint, which alleged that attorney re- fused to perform his duties pursuant to his employment contracts with client, also pleaded breach of contract claim, which was governed by the six year statute of limitations and was not time barred since action was brought within six years from when attorney was first hired. C.G.S.A. §§ 52–576, 52–577, 52–584.

**6. Action ⟷27(1)**
   **Limitation of Actions ⟷16**

The same course of conduct may sound both in tort and in contract, and the court should apply the relevant statute of limitations to each claim.

**7. Limitation of Actions ⟷46(6)**

In an action for breach of contract, the cause of action is complete, for limita- tions purposes, at the time the breach of contract occurs, that is, when the injury has been inflicted.

————

Luba N. Hill, pro se, the appellant (plaintiff), filed a brief.

Norman A. Pattis, New Haven, filed a brief for the appellee (named defendant).

SCHALLER, FLYNN and BISHOP, Js.

PER CURIAM.

The plaintiff, Luba N. Hill, representing herself, brought an action against her for-

mer attorney, John R. Williams, seeking damages based upon various legal theories.[1] The question presented by this appeal is whether in granting summary judgment the trial court properly concluded that the complaint sounded only in tort theories and not in contract and was therefore barred by the tort statutes of limitations. We reverse the judgment of the trial court in part.

[1] The issue before the court invokes our plenary power to review the legal effect of pleadings and to review the grant of a summary judgment. See *Giulietti v. Giulietti*, 65 Conn.App. 813, 833, 784 A.2d 905 ("question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo"), cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001); *Stingone v. Elephant's Trunk Flea Market*, 53 Conn.App. 725, 729, 732 A.2d 200 (1999) (" '[s]ummary judgment may be granted where the claim is barred by the statute of limitations' "); *Baldwin v. Jablecki*, 52 Conn.App. 379, 381, 726 A.2d 1164 (1999) (" 'The interpretation of pleadings is always a question of law for the court.' "). "Whenever [the] language [of the pleadings] fails to define *clearly* the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice *between*

the parties." (Emphasis in original; internal quotation marks omitted.) *Dietter v. Dietter*, 54 Conn.App. 481, 489, 737 A.2d 926, cert. denied, 252 Conn. 906, 743 A.2d 617 (1999). "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party." (Internal quotation marks omitted.) *Macricostas v. Kovacs*, 67 Conn.App. 130, 133, 787 A.2d 64 (2001). "The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Beaudoin v. Town Oil Co.*, 207 Conn. 575, 587–88, 542 A.2d 1124 (1988).

On March 23, 1999, the plaintiff commenced the present action. Her complaint contains a variety of allegations that sound in tort.[2] The preamble of the complaint also states that this case "is filed as a breach of contract" between the plaintiff and the defendant. The defendant first moved for summary judgment on April 19, 2000. The defendant's counsel was not able to attend the first hearing on his motion, which the court denied on May 8, 2000. Almost ten months after that denial, on February 22, 2001, the defendant filed another motion for summary judgment. Neither party filed affidavits supporting or opposing the motion.[3] The court held a

---

1. The amended complaint also named as defendants Williams' wife and the law firms and individuals who have been associated with Williams' law practice in recent years. On September 28, 1999, the trial court granted a motion to strike and dismissed the action with respect to all of the defendants except for John Williams and the estate of Sue Wise. The estate of Sue Wise filed a motion for summary judgment separate from that of the defendant Williams. The court granted the Wise estate's motion on January 10, 2002. The sole remaining defendant for purposes of

this appeal is John R. Williams, to whom we will refer as the defendant in this opinion.

2. The complaint also contains thirteen numbered paragraphs at its beginning which we will refer to as its "preamble" because they come before the plaintiff begins separately numbering the counts of her complaint.

3. This summary judgment motion was the procedural vehicle which the defendant used to assert that the complaint sounded only in tort and not in contract. The defendant ar-

ies." (Emphasis in original; in-
uotation marks omitted.) *Dietter
er*, 54 Conn.App. 481, 489, 737
, cert. denied, 252 Conn. 906, 743
517 (1999). "[I]t is the established
t the Connecticut courts to be so-
of pro se litigants and when it
interfere with the rights of other
to construe the rules of practice
in favor of the pro se party."
l quotation marks omitted.) *Ma-
s v. Kovacs*, 67 Conn.App. 130,
7 A.2d 64 (2001). "The modern
hich is followed in Connecticut, is
rue pleadings broadly and realis-
rather than narrowly and techni-
(Internal quotation marks omit-
*Beaudoin v. Town Oil Co.*, 207
75, 587–88, 542 A.2d 1124 (1988)."

arch 23, 1999, the plaintiff com-
the present action. Her complaint
a variety of allegations that sound

The preamble of the complaint
tes that this case "is filed as a
of contract" between the plaintiff
defendant. The defendant first
or summary judgment on April 19.
The defendant's counsel was not
attend the first hearing on his
which the court denied on May 8,
lmost ten months after that denial,
uary 22, 2001, the defendant filed
motion for summary judgment.
party filed affidavits supporting or
g the motion.[3] The court held a

---

arings657 and, on May 31, 2001, granted
e defendant's renewed motion for sum-
ary judgment.

The plaintiff first claims that the court's
enial of the motion for summary judg-
ent on May 8, 2000, prohibited the defen-
ant from subsequently filing an essential-
identical motion. There is no dispute
at the defendant's counsel was not able
attend the hearing to argue the first
otion for summary judgment. The court
oted in its memorandum of decision that
e defendant simply refiled the motion for
ummary judgment that had been denied
reviously but stated that the earlier mo-
on had been denied "without prejudice
d [the] court expressly provided that the
efendant could file a new motion for sum-
ary judgment."

[2, 3] "[A]lthough a judge should not
ightly depart from a prior ruling on a
otion before the same or a different
dge, the prior ruling is not binding."
*arnes v. Schlein*, 192 Conn. 732, 734, 473
.2d 1221 (1984); see also *Wagner v.
lark Equipment Co.*, 259 Conn. 114, 130–
1, 788 A.2d 83 (2002). We must bear in
ind that where there have been different
ecisions on the same point of law, "the
mportant question is not whether there
as a difference but which view was
ight." (Internal quotation marks omit-
ed.) *Barnes v. Schlein, supra*, at 734, 473
.2d 1221. In light of the circumstances
f this case, where the court denied the

---

initial motion "without prejudice," we con-
clude that the court acted properly in re-
considering the defendant's motion for
summary judgment.

The plaintiff's second claim calls on us to
conclude that the court improperly granted
summary judgment in favor of the defen-
dant because the complaint contained the
statement: "This lawsuit is filed as a
breach of contract between John Williams
and his client, the plaintiff." If the com-
plaint sounds in breach of contract, the six
year statute of limitations provided by
General Statutes § 52–576 is applicable.
However, if the complaint658 merely pleads
legal malpractice or other claims sounding
in tort, the applicable statutes of limita-
tions would be at most three years, and, by
virtue of the dates it sets out, the com-
plaint would be time barred. See General
Statutes §§ 52–577 and 52–584.[4]

The plaintiff's causes of action for the
most part are intentional torts governed
by § 52–577, resulting in a statute of limi-
tations of "three years from the date of the
act or omission complained of." General
Statutes § 52–577. The plaintiff's claims
of negligence and reckless, wanton or wil-
ful misconduct are governed by § 52–584,
which provides that the cause of action
must be brought within two years "from
the date when the injury is first sustained
or discovered or in the exercise of reason-
able care should have been discovered, and
except that no such action may be brought

---

peal is John R. Williams, to whom we
fer as the defendant in this opinion.

complaint also contains thirteen num-
paragraphs at its beginning which we
fer to as its "preamble" because they
before the plaintiff begins separately
ring the counts of her complaint.

summary judgment motion was the
ural vehicle which the defendant used
rt that the complaint sounded only in
d not in contract. The defendant ar-

gued that, since the complaint set forth all
relevant dates, it mandated judgment for the
defendant because all of his alleged breaches
of duty occurred more than three years prior
to the commencement of the action and were
therefore barred by the applicable tort stat-
utes of limitations. In addition, the plaintiff
set out the dates on which she claimed to
have engaged the defendant in a contract for
legal services, and, as with the tort claims, we
are able to ascertain the date she commenced
the action against the defendant and deter-
mine from that record whether the dates set

---

forth occurred within six years of the com-
mencement of the action. For these reasons,
supporting affidavits and counter affidavits
were unnecessary for the court to determine
what was essentially a legal issue.

4. We note that the defendant's answer and
special defenses did not plead a specific stat-
ute of limitations, but stated generally "[e]ach
and every claim of the plaintiff is barred by
the applicable statute of limitations."

more than three years from the date of the act or omission complained of...." General Statutes § 52–584.

[4] Viewing all of the events pleaded by the plaintiff in her complaint in the light most favorable to her; see *LaFlamme v. Dallessio,* 261 Conn. 247, 262, 802 A.2d 63 (2002); we note that all of the alleged tortious misconduct took place while the defendant was representing the plaintiff. That relationship ended on February 6, 1995. The plaintiff commenced her action on March 23, 1999, more than four years after discharging the defendant and, therefore, more than four years after any such tortious conduct could have occurred. The plaintiff's causes of action that sound in tort are, therefore, time barred by the application of §§ 52–577 and 52–584.

[5] The plaintiff argues, however, that her complaint also alleges a breach of contract and, therefore, § 52–576 [5] provides the appropriate statute of limitations.[5] We agree with the plaintiff. Although not artfully pleaded, parts of her complaint sound in breach of contract.[6]

Our Supreme Court has recognized that not all claims against an attorney are necessarily sounding in tort. See *Stowe v. Smith,* 184 Conn. 194, 198–99, 441 A.2d 81 (1981); *Robbins v. McGuinness,* 178 Conn. 258, 261–62, 423 A.2d 897 (1979). In the present case, the complaint goes beyond being merely "couched in the language of tort...." *Shuster v. Buckley,* 5 Conn.App. 473, 478, 500 A.2d 240 (1985).

The plaintiff, in her complaint, describes the matters for which the defendant was

hired and the dates on which the parties created the relevant agreements. Specifically, on March 27, 1993, the defendant agreed "to represent the plaintiff in a civil action against her ex-husband." On April 14, 1993, the defendant agreed "to represent the plaintiff in her family case to appeal her divorce, obtain accurate support and obtain sole custody of the Hill children." And finally, on May 3, 1993, the defendant agreed "to represent the plaintiff in her legal malpractice suit against her [former] divorce attorney." The plaintiff then describes her complaint as a "breach of contract lawsuit."

At several points in the complaint, the plaintiff refers not only to the defendant's failure to proceed in several actions, but also to the defendant's refusals to take certain actions in furtherance of the matters for which the defendant had been hired. The New College Edition of the American Heritage Dictionary of the English Language [660] (1981) defines the word "refuse" as "to decline to do." It goes on to state: "Refuse is used of a positive, unyielding, sometimes brusque decision not to act, accept, or do something."

[6] Use of the word "refuse" imports an intentional act rather than some inadvertence or negligent act or omission on the part of the defendant in breach of the agreements between the parties. For example, after describing the complaint as a "breach of contract lawsuit" in the preamble, the twenty-fourth count (incorporating language from a previous count) alleges that the defendant "refused to file [the] correct motion to obtain correct support" and "refused to schedule hearings ... to

obtain corre[...]
would appear[...]
the alleged[...]
This count a[...]
the defendan[...]
his "breach o[...]
treated this l[...]
duty of reaso[...]
ligence cases[...]
arise pursuan[...]
edly existed[...]
same course[...]
tort and in c[...]
Negligence[...]
court should[...]
limitations to[...]

The allega[...]
breach of con[...]
disagree with[...]
plaintiff's con[...]
any counts[...]
tract...."

The court,[...]
ed "the Con[...]
allowed plain[...]
attorneys in[...]
where each cl[...]
rate counts.'[...]
*Westport Ba[...]
Mallin & Ar[...]
605 A.2d 862[...]
proposition.[...]
*Bank & Tr[...]
proposition f[...]
namely, that[...]
must be plea[...]
contract thec[...]
plaintiff in 1[...]
alleged in se[...]
dant in that[...]
client contra[...]
practice. *Id.*[...]
hold that sep[...]
contract into[...]

---

5. According to General Statutes § 52–576, "[n]o action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues."

6. We do not comment on the legal sufficiency of any counts of the complaint sounding in contract in terms of whether they set out each and every necessary element of a contract claim because that issue was not raised and is not before us.

7. Black's La[...]
fines a legal

the dates on which the parties
e relevant agreements. Specifi-
March 27, 1993, the defendant
represent the plaintiff in a civil
inst her ex-husband." On April
he defendant agreed "to repre-
plaintiff in her family case to
r divorce, obtain accurate sup-
obtain sole custody of the Hill
And finally, on May 3, 1993, the
agreed "to represent the plain-
r legal malpractice suit against
er] divorce attorney." The plain-
describes her complaint as a
' contract lawsuit."

ral points in the complaint, the
efers not only to the defendant's
proceed in several actions, but
he defendant's refusals to take
ctions in furtherance of the mat-
which the defendant had been
'he New College Edition of the
Heritage Dictionary of the En-
guage₆₆₀ (1981) defines the word
as "to decline to do." It goes on
"Refuse is used of a positive,
g, sometimes brusque decision
, accept, or do something."

se of the word "refuse" imports
ional act rather than some inad-
or negligent act or omission on
of the defendant in breach of the
nts between the parties. For ex-
fter describing the complaint as a
of contract lawsuit" in the pream-
twenty-fourth count (incorporating
e from a previous count) alleges
defendant "refused to file [the]
motion to obtain correct support"
used to schedule hearings ... to

o not comment on the legal sufficiency
counts of the complaint sounding in
ct in terms of whether they set out each
rery necessary element of a contract
pecause that issue was not raised and is
ore us.

obtain correct support," actions which
would appear to be required of him under
the alleged April 14, 1993 agreement.
This count and several others allege that
the defendant is liable to the plaintiff for
his "breach of duty." The court implicitly
treated this language as meaning only the
duty of reasonable care considered in neg-
ligence cases. However, a duty also may
arise pursuant to a contract such as alleg-
edly existed in this case.[7] Moreover, the
same course of conduct may sound both in
tort and in contract; see 57A Am.Jur.2d,
Negligence §§ 119–25 (1989); and the
court should apply the relevant statute of
limitations to each claim.

The allegations described apply to a
breach of contract claim. We, therefore,
disagree with the court's holding that the
plaintiff's complaint "failed ... to include
any counts alleging breach of con-
tract...."

The court, in reaching that holding, stat-
ed "the Connecticut Supreme Court has
allowed plaintiffs to initiate actions against
attorneys in both tort and contract only
where each claim is clearly alleged in sepa-
rate counts." [₆₆₀]The trial court cited
Westport Bank & Trust Co. v. Corcoran,
Mallin & Aresco, 221 Conn. 490, 494 n. 5,
605 A.2d 862 (1992), as support for this
proposition. We do not read Westport
Bank & Trust Co. as authority for the
proposition for which the court cited it,
namely, that tort and contract theories
must be plead in separate counts for the
contract theory to be legally viable. The
plaintiff in Westport Bank & Trust Co.
alleged in separate counts that the defen-
dant in that case breached an attorney-
client contract and committed legal mal-
practice. Id. At no point did the court
hold that separating the claims of tort and
contract into distinct counts was a prereq-

uisite to the recognition of a claim sound-
ing in contract. See id. "We have uni-
formly approved the use of a single count
to set forth the basis of a plaintiff's claims
for relief where they grow out of a single
occurrence or transaction or closely relat-
ed occurrences or transactions, and it does
not matter that the claims for relief do not
have the same legal basis." Veits v. Hart-
ford, 134 Conn. 428, 438–39, 58 A.2d 389
(1948); see also Knapp v. Walker, 73
Conn. 459, 461, 47 A. 655 (1900) (fraud and
breach of contract claims made in single
count); Burns v. Koellmer, 11 Conn.App.
375, 385–86, 527 A.2d 1210 (1987) (com-
plaint contained contractual, quasi-contrac-
tual theories of recovery in same count).

"If the defendant had wished to distin-
guish more particularly the theories in-
voked by the pleadings, his recourse was a
request to revise the pleadings." Burns v.
Koellmer, supra, 11 Conn.App. at 387, 527
A.2d 1210; see also Practice Book § 10–35.
If the defendant was not satisfied with the
state of the pleadings after any such revi-
sion, he could have filed further requests
for revision.

The trial court also relied on our deci-
sion in Shuster v. Buckley, supra, 5 Conn.
App. at 473, 500 A.2d 240. We believe
that Shuster is readily distinguishable
from the plaintiff's case. In Shuster, un-
like the present case, the complaint
[₆₆₂]made no averment that the claim was
brought as a breach of contract. See id.
It was only after the trial court in Shuster
already had granted the defendant's mo-
tion for summary judgment based on the
tort statute of limitations in § 52–577 that
the plaintiff in that case attempted to add
a count alleging breach of contract to his
complaint. Id., at 475–76, 500 A.2d 240.

---

7. Black's Law Dictionary (7th Ed.1999) de-
fines a legal duty as "a duty arising by con-

tract or by operation of law; an obligation the
breach of which would be a legal wrong."

[7] · We conclude that the six year statute of limitations set forth in § 52–576 applies to the plaintiff's complaint insofar as it seeks to hold the defendant liable for his refusal to perform his duties pursuant to his contracts with the plaintiff. "In an action for breach of contract ... the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted." *Kennedy v. Johns–Manville Sales Corp.,* 135 Conn. 176, 180, 62 A.2d 771 (1948). According to the pleadings, the plaintiff first hired the defendant on March 27, 1993, and eventually discharged the defendant on February 6, 1995. Any alleged breach of contractual duty on the defendant's part, triggering the six year statute of limitations, would have occurred during that span of time. The plaintiff commenced the present action on March 9, 1999. With fewer than six years passing between when the defendant was first hired and the date the action commenced, the present action must have been brought within the contract statute of limitations set by § 52–576. It was, therefore, improper for the court to grant the defendant's motion for summary judgment on the entire complaint where that complaint alleged a breach of contractual duty.

We conclude on the basis of our review of the record that allegations sounding in contract are contained in the preamble and in counts 13, 24, 35, 54, 65, 76, 87, 95, 116, 127, 138, 149, 160, 171, 182, 193, 201, 216, 232, 247, 262 and 277.

|₆₆₃The judgment is reversed only as to those allegations sounding in contract and the case is remanded for further proceedings on those allegations.



---

74 Conn.App. 663

|₆₆₃**STATE of Connecticut**

v.

**Joseph HOSKIE.**

**No. 22786.**

Appellate Court of Connecticut.

Submitted on Briefs Oct. 28, 2002.

Decided Jan. 28, 2003.

Defendant was convicted in the Superior Court, Judicial District of New Haven, William L. Hadden, Jr., judge trial referee, of kidnapping in the first degree and unlawful restraint, and he appealed. The Appellate Court, West, J., held that evidence of defendant's prior uncharged misconduct properly was admitted.

Affirmed.

**1. Criminal Law ⟐371(1)**

Evidence of defendant's prior uncharged misconduct, namely that defendant had threatened the victim on several occasions prior to the kidnapping incident for which he was charged, properly was admitted; prior misconduct evidence was relevant to the issue of intent, prior misconduct evidence involved relatively minor incidents in comparison to the details of the assault and kidnapping with which the defendant was charged, and given the potent character of the evidence regarding the charged conduct, the nature of the prior misconduct evidence was unlikely to arouse emotions of hostility and prejudice on the part of the fact finder.

**2. Criminal Law ⟐369.1**

As a general rule, evidence of a defendant's prior crimes or misconduct is not admissible.

3. Cri

P
missi
tive, a
trial o
judicia
of the
tende

4. Cri

T
dence
miscon
abuse
injusti
reason
favor o

5. Cri

O
as exp
tims of
had no
ness li
disclos
name
pared
and in
require
practic
dation
trial. i

6. Cri

A
proper
der an

7. Cri

T
ing on
ny and
abused
concep
sion wi

**EXHIBIT THREE**

...her in the context and under the ...stances in which the statement ...nade, the jury [was], actually, or ...robably, misled or coerced." (Cita... ...nitted; internal quotation mark... ...l.) *State v. Spyke,* 68 Conn.App. 9... 2 A.2d 93, cert. denied, 261 Con... 4 A.2d 214 (2002).

"The purpose of the [Chip Smith ...tion is to prevent a hung jury b... ...the jurors to attempt to reach ...ent. It is a settled part of Co... ...t jurisprudence.... Better tha... ...er statement ... it makes clear th... ...ty, on the one hand, of unanimit... ...the jurors in any verdict, and o... ...er hand the duty of careful consid... ...by each juror of the views an... ...s of each of his fellow jurors... ...n omitted; internal quotatio... ...omitted.) *State v. O'Neil,* 26... 9, 60, 801 A.2d 730 (2002)."

"[A] Chip Smith charge, while e... ...ng a continued search for unanim... ...o stresses that each juror's vot...

...put it another way succinctly, *althoug* ...rdict to which a juror agrees must, ...be his own conclusion and not me... ...scence in the conclusion of his fellow... ...order to bring twelve minds to a unan... ...result, the jurors should examine wit... ...r the questions submitted to them; an... ...lue regard and deference to the opinio... ...ch other. In conferring together, th... ...ught to pay proper respect to each of... ...pinions. The jurors ought *not* to doub... ...onclusions of a judgment which is no... ...rred in by most of those with whom yo... ...associated, and distrust the weight ... ...ency of that evidence which fails t... ...conviction to the minds of your fellow... ...I am going to ask you to go back to th... ...oom and discuss this case further onc... ...erk sends in the exhibits and the info... ...n. I would say to you, though, if yo... ...an impasse, you can so notify the cou... ...simple statement the you cannot agre... ...t you have reached an impasse.... Yo... ...ow go back." (Emphasis added.)

must be his [or her] own conclusion and not a mere acquiescence in the conclusions of his [or her] fellows.... The language of the charge does not direct a verdict, but encourages it." (Citation omitted; internal quotation marks omitted.) *State v. Feliciano,* 256 Conn. 429, 440, 778 A.2d 812 (2001).

"By asking the jurors to consider the views and arguments of others, the court's instructions embodied the very essence of the jury system, which is to secure unanimity by a comparison of views, and by arguments among the jurors themselves.... It would defy logic to suggest that a juror should not listen with deference to the views of others, particularly when a majority of the others holds a different view of the case than his own. No juror should possess the blind determination that the verdict shall represent his opinion, deaf to those whose equal intelligence and integrity have brought them to a different place.... The charge in the present case, when read as a whole, properly informed the jury that each member had the individual responsibility to consider the opinion of the others *and* to satisfy him or herself of the correctness of his or her opinion and not merely to acquiesce in the conclusion of others." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., at 441–42, 778 A.2d 812.

[34] The fact that the court knew that the jury's vote was ten to two in favor of conviction does not render the court's Chip Smith instructions unduly coercive. When the vote tally is disclosed to the court voluntarily and without solicitation, the fact that the court knew of the split before giving a Chip Smith charge does not constitute error. Id., at 443 n. 6, 778 A.2d

---

We note that our Supreme Court has exercised its supervisory powers over the administration of justice to require trial courts to use a Chip Smith charge that emphasizes the ju-

---

812; see also *United States v. Meyers,* 410 F.2d 693, 697 (2d Cir.), cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 86 (1969); *United States v. Sawyers,* 423 F.2d 1335, 1340 (4th Cir.1970); *United States v. Cook,* 663 F.2d 808, 809 n. 3 (8th Cir.1981).

When read as a whole, the court's instructions to the jury, including the two Chip Smith charges, were not unduly coercive. The court clearly stated that each juror's individual vote must be based on his or her own conclusion and not on mere acquiescence to the conclusion of other jurors. In the second Chip Smith charge, after which a verdict was returned, the court charged the minority jurors that they were *not* to doubt their position because it was contrary to that of the majority. Accordingly, after our careful review of the record, we conclude that the court's charge was proper.[5]

The judgment is affirmed.

In this opinion the other judges concurred.



76 Conn.App. 119

Joseph E. CELENTANO et al.

v.

Ira B. GRUDBERG et al.

No. 22656.

Appellate Court of Connecticut.

Argued Dec. 3, 2002.

Decided April 8, 2003.

Client brought action against attorney and his law firm for breach of contract for

---

rors' duty not to merely acquiesce in the majority's view. *State v. O'Neil,* supra, 261 Conn. at 74–75, 801 A.2d 730.

not pursuing client's matter to a conclusion. Following a jury trial, the Superior Court, Judicial District of New Haven, Munro, J., directed verdict for defendants. Client appealed. The Appellate Court, Lavery, C.J., held that attorney's performance did not constitute such an obvious and gross want of care and skill that his failure to comply with the standard of care was clear, and thus client was required to present expert testimony to establish the proper standard of professional care.

Affirmed.

**1. Appeal and Error ⚖866(3)**
 **Jury ⚖12(3)**
 **Trial ⚖168**

Generally, litigants have a constitutional right to have factual issues resolved by the jury; directed verdicts, therefore, are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. U.S.C.A. Const. Amend. 6.

**2. Appeal and Error ⚖927(7)**

Appellate court reviews a trial court's decision to direct a verdict for the defendants by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiffs.

**3. Trial ⚖139.1(16), 168**

A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict.

**4. Attorney and Client ⚖129(2)**

Attorney's performance did not constitute such an obvious and gross want of care and skill that his failure to comply with the standard of care was clear, even to a layperson, and thus client who brought breach of contract action against attorney for not pursuing client's matter to a conclusion was required to present expert testimony to establish the proper

standard of professional skill and care to which attorney was held and to assist the jury in evaluating his performance in light of that standard, where attorney encountered numerous obstacles and delays, not of his own making, in his attempts to pursue client's case, and attorney abandoned client's case only after client indicated that recovery would be essentially uncollectible.

**5. Attorney and Client ⚖105**

An attorney may be subject to a claim for breach of contract arising from an agreement to perform professional services.

**6. Attorney and Client ⚖105**

A breach of contract action against an attorney, on the basis of an implied contract is, essentially, governed by the same principles as a negligence action, and both are predicated on the standard of care applicable to the attorney.

**7. Attorney and Client ⚖76(1)**

An attorney does not, by agreeing to represent or to provide professional services to a client, impliedly contract to see the client's claim through to conclusion.

**8. Attorney and Client ⚖107**

An attorney, by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.

**9. Attorney and Client ⚖105**

In the absence of an express promise to see a claim through to conclusion, an attorney will breach a contract arising from an agreement to perform professional services for a client only if his performance fails to comply with the applicable standard of care.

f professional skill and care
ney was held and to assist
luating his performance in lig
ndard, where attorney encou
rous obstacles and delays, no
n making, in his attempts
nt's case, and attorney aba
t's case only after client indic
overy would be essentially

**r and Client ⟲105**

rney may be subject to a clai
of contract arising from
to perform professional se

**r and Client ⟲105**

ch of contract action against
n the basis of an implied co
entially, governed by the sam
s a negligence action, and bo
ated on the standard of ca
o the attorney.

**r and Client ⟲76(1)**

orney does not, by agreeing
r to provide professional se
lient, impliedly contract to
claim through to conclusion

**r and Client ⟲107**

torney, by accepting employ
ive legal advice or to rend
services, impliedly agrees
ill, prudence, and diligence
ordinary skill and capacity co
ess and exercise in the perfo
ne tasks which they undertak

**r and Client ⟲105**

absence of an express prom
aim through to conclusion,
ill breach a contract arisi
eement to perform professio
a client only if his performa
nply with the applicable sta
e.

**10. Negligence ⟲1657**

If the determination of the standard
of care in a negligence action requires
knowledge that is beyond the experience
of an ordinary fact finder, expert testimo-
ny will be required.

**11. Attorney and Client ⟲129(2)**

Where an attorney's exercise of prop-
er professional skill and care is in issue,
expert testimony tending to establish the
want of such skill and care is essential to
recovery; the only exception to this rule is
where there is present such an obvious
and gross want of care and skill that the
neglect to meet the standard of care is
clear even to a layperson.

———

David Toro, with whom, on the brief,
was John R. Williams, New Haven, for the
appellant (plaintiffs).

David A. Leff, with whom were Trisha
Morris Porto and, on the brief, Ira B.
Grudberg, New Haven, for the appellees
(defendants).

LAVERY, C.J., and DRANGINIS and
PETERS, Js.

LAVERY, C.J.

This case concerns the failure of the
plaintiffs to present expert testimony in a
breach of contract action against their for-
mer attorney and his law firm, and the
direction of a verdict by the trial court
against the plaintiffs for their failure to
present such testimony and for their fail-
ure to present evidence of damages. The

dispositive issue in this appeal is whether
the plaintiffs were required to present ex-
pert testimony to prove their breach of
contract claim. Because we conclude that
the plaintiffs' breach of contract claim re-
quired expert testimony to establish the
defendants' standard of care and to assist
the jury in determining whether the de-
fendants' actions complied with that stan-
dard, we affirm the judgment of the trial court.

The following facts and procedural histo-
ry are necessary for the disposition of the
plaintiffs' appeal. This breach of contract
claim arose out of an attorney-client rela-
tionship that was formed in December,
1987, [1] between the plaintiffs, Joseph E.
Celentano and Solid Waste Disposal, Inc.
(Solid Waste), and the defendants, Ira B.
Grudberg and his law firm, Jacobs, Grud-
berg, Belt and Dow.[1] Celentano and Jo-
seph Latella (Latella) were principals and
owners of Solid Waste, a closely held cor-
poration that operated landfills in West
Haven. Latella and his son, Peter Latella,
were principals in Latella Carting Compa-
ny, Inc. (Latella Carting), a company that
dumped refuse in the two landfills operat-
ed by Solid Waste. In 1985, Celentano
and Latella entered into an agreement
(1985 agreement) relating to the operation
of the landfills.[2]

At some point subsequent to the 1985
agreement, Celentano came to believe that
he was being cheated at the landfills. Spe-
cifically, he believed that trucks operated
by Latella Carting were dumping more
refuse in the early mornings, before the
opening of the scales, than was allowed
under the 1985 agreement.[3] In Septem-

1. For purposes of this opinion, when we refer
to Grudberg, we incorporate Jacobs, Grud-
berg, Belt and Dow by reference, as Grudberg
and his law firm are synonymous for pur-
poses of this appeal.

2. At some point subsequent to the 1985 agree-
ment between Celentano and Latella relating
to Solid Waste's operation of two landfills,

Joseph Latella assigned his interest in Solid
Waste to his son, Peter Latella.

3. One of the provisions of the agreement al-
lowed Latella Carting to "deliver and dump at
Solid Waste disposal sites no more than seven
truckloads of solid waste per day prior to the
opening of the scales at 7:00 a.m. each day."

ber, 1987, Celentano consulted with Grudberg regarding the possibility of pursuing a claim against certain individuals and entities with whom he was involved at the landfill, including the Latellas and Latella Carting. In December, 1987, Celentano again met with Grudberg and expressed his desire to proceed with a claim. On December 9, 1987, Grudberg sent a letter to Celentano, confirming their retainer agreement. Pursuant to that agreement, Celentano paid a $10,000 retainer to Grudberg.[4]

The 1985 agreement contained an arbitration provision that provided that any disputes "arising subsequent to the date of [the] Agreement over the operation of Solid Waste or the interpretation of [the] Agreement shall be submitted to private arbitration and the parties agree that the independent arbitrator shall be Joseph Dobrowolski . . . ." Grudberg made a strategic decision to institute an action against individuals who were not parties to the 1985 agreement to gain information through the utilization of discovery procedures. He did that because he wanted to take depositions of certain individuals who might have had pertinent information rather than to "subpoena them in, cold turkey, as part of an arbitration . . . ." Grudberg encountered numerous obstacles and delays in his attempt to obtain depositions of the various individuals.[5] Ultimately, he had to obtain a court order to compel the depositions of certain individuals. In September, 1990, the depositions were completed, and Grudberg withdrew the case. In January, 1991, more than two years after taking the plaintiffs' case, Grudberg obtained a court order for arbitration. The arbitration was never completed.

In 1998, the plaintiffs filed the present action. In their complaint, the plaintiffs alleged that the defendants had breached their contract by (1) not obtaining a court order to compel arbitration for more than two years after the defendants were retained by the plaintiffs, and (2) never conducting the arbitration hearing and abandoning the plaintiffs' claims on or after June 29, 1994.

The case was tried to a jury. At the conclusion of the plaintiffs' case-in-chief, the defendants sought a directed verdict. The court granted the motion and directed the jury to return a verdict in favor of the defendants as a matter of law because it concluded that the plaintiffs had failed (1) to present expert testimony as to "[w]hether [Grudberg's] conduct in the performance of his duties met the standard of attorneys doing work of this nature or was deficient" and (2) to adduce any evidence of damages. This appeal followed. Additional facts will be set forth as necessary.

[1–3] Initially, we set forth our standard of review with respect to directed verdicts. "The standards for reviewing a challenge to a directed verdict are well known. Generally, litigants have a constitutional right to have factual issues resolved by the jury . . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion . . . . We review a trial court's decision to direct a verdict for the defendant[s] by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff[s] . . . . A verdict may be di-

---

4. According to the letter, the defendants, in addition to the $10,000 retainer, were to receive, on a contingency basis, 15 percent of any sums the defendants recovered on the plaintiffs' behalf.

5. Among those obstacles and delays were other attorneys' scheduling problems, unrepresented individuals, motions to withdraw and deponents who failed to attend depositions.

rected v
of law o
insufficie
verdict."
tation m
Conn.Ap
(2002), c
A.2d 138

[4]  O
the cour
in favor
the plain
erly dete
present
breach of
dants.[6]  V

The
simple br
practice  c
therefore,
quired.
*Margolis,*
(1990), th
expert te
quired in :
ny was n
[was] pres
want of c:
clear even
tation mar
A.2d 489.

The plai
improperly
mony was
of contract
not a case
petence or
care by th
the only iss
er the def
thing in ex

6. The plair
properly d
adduce ev
resolution
positive of
the plaintif

8, the plaintiffs filed the present
In their complaint, the plaintiffs
hat the defendants had breached
tract by (1) not obtaining a court
compel arbitration for more than
s after the defendants were re-
the plaintiffs, and (2) never con-
he arbitration hearing and aban-
ae plaintiffs' claims on or after
1994.

se was tried to a jury. At the
1 of the plaintiffs' case-in-chief,
idants sought a directed verdict.
rt granted the motion and
d the jury to return a verdict in
he defendants as a matter of law
; concluded that the plaintiffs had
to present expert testimony as to
r [Grudberg's] conduct in the
ice of his duties met the stan-
ittorneys doing work of this na-
as deficient" and (2) to adduce
nce of damages. This appeal
Additional facts will be set forth
ary.

Initially, we set forth our stan-
eview with respect to directed
"The standards for reviewing a
to a directed verdict are well
lenerally, litigants have a consti-
ight to have factual issues re-
the jury.... Directed verdicts
] are historically not favored and
oheld on appeal only when the
not have reasonably and legally
ny other conclusion.... We re-
ial court's decision to direct a
the defendant[s] by considering
evidence, including reasonable
, in the light most favorable to
iff[s].... A verdict may be di-

those obstacles and delays were oth-
eys' scheduling problems, unrepre-
dividuals, motions to withdraw and
; who failed to attend depositions.

rected where the decisive question is one
of law or where the claim is that there is
insufficient evidence to sustain a favorable
verdict." (Citations omitted; internal quo-
tation marks omitted.) *Vona v. Lerner*, 72
Conn.App. 179, 186–87, 804 A.2d 1018
(2002), cert. denied, 262 Conn. 938, 815
A.2d 138 (2003).

[4] On appeal, the plaintiffs claim that
the court improperly directed the verdict
in favor of the defendants. Specifically,
the plaintiffs claim that the court improp-
erly determined that they were required to
present expert testimony to prove their
breach of contract claim against the defen-
dants.[6] We disagree.

The plaintiffs argue that this is a
simple breach of contract claim, not a mal-
practice claim based on negligence, and,
therefore, expert testimony was not re-
quired. Alternatively, citing *Davis v.
Margolis*, 215 Conn. 408, 576 A.2d 489
(1990), the plaintiffs argue that even if
expert testimony ordinarily would be re-
quired in a case such as this, such testimo-
ny was not required here because "there
[was] present such an obvious and gross
want of care and skill that the neglect is
clear even to a lay-person." (Internal quo-
tation marks omitted.) Id., at 416 n. 6, 576
A.2d 489.

The plaintiffs first argue that the court
improperly determined that expert testi-
mony was required to prove their breach
of contract case. They argue that this is
not a case in which they alleged incom-
petence or failure to meet a standard of
care by the defendants, but that, instead,
the only issue before the jury was "wheth-
er the defendant agreed to do a specific
thing in exchange for consideration which

6. The plaintiffs also claim that the court im-
properly determined that they had failed to
adduce evidence of damages. Because our
resolution of the plaintiffs' first claim is dis-
positive of this appeal, we need not address
the plaintiffs' second claim.

was paid and then failed to do it." Al-
though the plaintiffs' counsel conceded at
oral argument that there was not an ex-
press contract between the parties, the
plaintiffs, nevertheless, contend that the
defendants "agreed, in exchange for a fee,
to institute and to pursue to a conclusion a
claim by the plaintiffs against certain per-
sons and entities, and that they breached
that contract by not pursuing the matter
to a conclusion." [7]

[5] It is well settled that an attorney
may be subject to a claim for breach of
contract arising from an agreement to per-
form professional services. See *Mac's Car
City, Inc. v. DeNigris*, 18 Conn.App. 525,
530, 559 A.2d 712, cert. denied, 212 Conn.
807, 563 A.2d 1356 (1989). In a claim such
as this, "the client [usually] has the option
to sue for either breach of an implied
contract, negligence, or both." 1 R. Mal-
len & J. Smith, Legal Malpractice (5th
Ed.2000) § 8.7, p. 820.

[6, 7] The difficulty with the plaintiffs'
argument is that a breach of contract ac-
tion against an attorney, on the basis of an
implied contract is, essentially, governed
by the same principles as a negligence
action, and both are predicated on the
standard of care applicable to the attorney.
See *Wong v. Ekberg*, 148 N.H. 369, 376,
807 A.2d 1266 (2002); *Peters v. Simmons*,
87 Wash.2d 400, 404, 552 P.2d 1053 (1976);
1 R. Mallen & J. Smith, supra, § 8.7, at pp.
819–20. Contrary to the plaintiffs' posi-
tion, an attorney does not, by agreeing to
represent or to provide professional ser-
vices to a client, impliedly contract to see
the client's claim through to a conclusion.
To read an attorney-client relationship to

7. We note that the plaintiffs have not alleged
that the defendants failed to follow a specific
instruction.

contain an implied promise to pursue a claim to conclusion would lead to bizarre and untenable results. There are conceivably many valid reasons why an attorney might decide, after taking a case, to not pursue it to conclusion.

[8, 9]  By agreeing to take on the representation of a client, the attorney promises to exercise ordinary skill and care in the representation of the client. 1 R. Mallen & J. Smith, supra, § 8.7, at p. 819; see also *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 181, 491 P.2d 421, 98 Cal.Rptr. 837 (1971); *Harris v. Magri*, 39 Mass.App. 349, 352, 656 N.E.2d 585 (1995); *Gorski v. Smith*, 812 A.2d 683, 703 (Pa.Super.2002); *Peters v. Simmons*, supra, 87 Wash.2d at 404, 552 P.2d 1053. Thus, an attorney, "by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.... These principles are equally applicable whether the plaintiff's claim is based on tort or breach of contract." (Citations omitted; internal quotation marks omitted.) *Kirsch v. Duryea*, 21 Cal.3d 303, 578 P.2d 935, 146 Cal.Rptr. 218 (1978); *Gorski v. Smith*, supra, at 703. In the absence of an express promise to see a claim through to conclusion, an attorney will breach the contract only if his performance fails to comply with the applicable standard of care.[8]

[10, 11]  To prove their claim, the plaintiffs were required to show that Grudberg's performance constituted a breach of the applicable standard of care. "If the determination of the standard of care requires knowledge that is beyond the experience of an ordinary fact finder, expert testimony will be required." *Santopietro v. New Haven*, 239 Conn. 207, 226, 682 A.2d 106 (1996). "The general rule is that where [an attorney's] exercise of proper professional skill and care is in issue, expert testimony tending to establish the want of such skill and care is essential to recovery." *Bent v. Green*, 39 Conn.Supp. 416, 420, 466 A.2d 322 (1983). The rationale underlying that rule is that in most cases, the determination of an attorney's standard of care, which depends on the particular circumstances of the attorney's representation, is beyond the experience of the average layperson, including members of the jury and perhaps even the presiding judge. See id., at 420, 466 A.2d 322; see also *Wong v. Ekberg*, supra, 148 N.H. at 374, 807 A.2d 1266 ("expert testimony is necessary to inform the jury regarding the skill and care ordinarily exercised by lawyers, a measure not ordinarily within the common knowledge of lay persons").

"The only exception to this rule is where there is present such an obvious and gross want of care and skill that the neglect [to meet the standard of care] is clear even to a layperson." *Bent v. Green*, supra, 39 Conn.Supp. at 420, 466 A.2d 322; see also *Davis v. Margolis*, supra, 215 Conn. at 416 n. 6, 576 A.2d 489; *Paul v. Gordon*, 58 Conn.App. 724, 727, 754 A.2d 851 (2000). Thus, unless the defendants' performance constituted such an obvious and gross want of care and skill as to fall within the exception to the expert witness requirement, the plaintiffs were required to present expert testimony to establish the proper standard of professional skill and care to which Grudberg was held and to assist the jury in evaluating his performance in light of that standard.

---

8. We note that in practice, complying with the standard of care often will mean seeing a client's claim through to conclusion. There

are, however, situations in which an attorney may fail to pursue a claim to conclusion and yet still comply with the standard of care.

will be required." *Santopietro v. New Haven*, 239 Conn. 207, 226, 682 A.2d 106 (1996). "The general rule is that where [an attorney's] exercise of proper skill and care is in issue, expert testimony tending to establish the required skill and care is essential to recovery." *Bent v. Green*, 39 Conn.Supp. 416, 420, 466 A.2d 322 (1983). The rationale underlying that rule is that in most cases the determination of an attorney's standard of care, which depends on the circumstances of the attorney's situation, is beyond the experience of the average layperson, including members of the jury and perhaps even the presiding judge. See id., at 420, 466 A.2d 322; see also *Somma v. Ekberg*, supra, 148 N.H. at 24, 802 A.2d 1266 ("expert testimony is required to inform the jury regarding the skill and care ordinarily exercised by lawyers and to measure not ordinarily within the knowledge of lay persons"). [text unclear]

[text unclear] exception to this rule is where "the present such an obvious and gross [want of] care and skill that the neglect [to meet the] standard of care] is clear even to [a layperson]." *Bent v. Green*, supra, 39 [Conn.Supp.] at 420, 466 A.2d 322; see also *Margolis*, supra, 215 Conn. at 416 418, 577 A.2d 489; *Paul v. Gordon*, 58 Conn.App. 724, 727, 754 A.2d 851 (2000). [Because] the defendants' performance [was not] such an obvious and gross [want of] care and skill as to fall within this [exception], the expert witness required [the] plaintiffs were required to present [expert] testimony to establish the proper [standard] of professional skill and care [that Gr]udberg was held and to assist [the jury in] evaluating his performance in [that] standard.

[In ot]her, situations in which an attorney [may] pursue a claim to conclusion and [c]omply with the standard of care.

The plaintiffs argue that the exception to the expert witness requirement applies here because Grudberg's performance constituted "such an obvious and gross want of care and skill that the neglect is clear even to a layperson." The plaintiffs contend that Grudberg's "neglect . . . consisted of doing nothing when something was required." We disagree.

The following additional facts are relevant to our resolution of the plaintiffs' claim. As previously stated, Grudberg, in his representation of the plaintiffs, was faced with a preexisting contract that contained an arbitration provision naming the arbitrator. He made a strategic decision to institute a separate action against individuals who were not parties to the 1985 agreement in order to pursue discovery. He encountered numerous obstacles and delays, not of his own making, in his attempts to obtain various depositions. After finally completing the depositions, in September, 1990, Grudberg moved forward with attempting to set up the arbitration. The arbitration opponents failed to respond to his demand for arbitration, requiring Grudberg to obtain a court order to compel the arbitration.

[G]rudberg then spent several months attempting, unsuccessfully, to set an arbitration date with the named arbitrator, Dobrowolski, who, apparently, would not schedule the arbitration unless all the parties were present and represented. [5/18 Trans. p. 68–70]. Grudberg also communicated with various attorneys in an attempt to determine if the Latellas were represented and to move forward with the arbitration. Grudberg did not, however, seek to remove Dobrowolski as the arbitrator.

[La]te in 1991, Celentano told Grudberg that he was going to try to work things out with Latella directly. Grudberg ceased pursuit of the arbitration and took no further action to pursue arbitration until March, 1993, when he next heard from Celentano. Beginning in March, 1993, Grudberg again made attempts to get an arbitration date set. In July, 1993, Grudberg received a letter from Celentano, informing him that the "Latellas financial situation is so serious that, I know, for a fact, there are no monies available." After receiving that letter, Grudberg, essentially, ceased pursuit of the arbitration.

This was not a case in which the defendant, after accepting the representation, did nothing. Rather, considerable evidence was presented at trial regarding the strategies Grudberg employed, the obstacles he encountered, the actions he took and did not take in his representation of the plaintiffs, and his reasons for taking or not taking those actions. Complicated legal and procedural issues were involved. Given the circumstances of Grudberg's representation and the work that he did on behalf of the plaintiffs, members of a jury would be without the knowledge or ability to determine whether the choices Grudberg made and the actions he took met the standard of an attorney exercising that "degree of care, skill and diligence which other attorneys in the same or similar locality . . . would have exercised in similar circumstances." *Bent v. Green*, supra, 39 Conn.Supp. at 420, 466 A.2d 322. The court was correct when it determined that "[j]ury fact finders are without the training, experience and knowledge of an attorney. Therefore, they require expert testimony to decide whether defendant Grudberg's abandonment of the claims were reasonable in light of his client's statement that a recovery would be essentially uncollectible and that the Latellas had nothing. And further, the jury would need the assistance of expert testimony . . . as to whether Grudberg's pursuit of arbitration through attorney Dobrowolski only . . . met the standard [of care]. And finally, whether defendant Grudberg's reliance on plaintiff Celenta-

**848** Conn.        **818 ATLANTIC REPORTER, 2d SERIES**

no's pursuit of Latella informally, [which ended up delaying the proceedings to a point where the Latellas lacked funds to pay a judgment against them], was a proper strategic decision." [9]

This was not a case in which the defendant's want of care was so gross and obvious that his failure to comply with the standard of care was clear, even to a layperson. See, e.g., *Paul v. Gordon,* supra, 58 Conn.App. at 727, 754 A.2d 851. Expert testimony was required to assist the jury in determining whether Grudberg's performance complied with the requisite standard of care. We conclude that because the plaintiffs failed to present expert testimony on the issue of the standard of care applicable to Grudberg, the court properly directed the jury to return a verdict in favor of the defendants on the plaintiffs' breach of contract claim.

The judgment is affirmed.

In this opinion the other judges concurred.



---

**9.** In regard to the plaintiffs' claim that the defendants breached their contract by not obtaining an order for arbitration until more than two years after accepting the representation, a claim that the plaintiffs' do not appear to pursue on appeal, the court stated, and we agree, that "[e]xpert testimony is necessary to assist the trier of facts in determining whether the conduct of the defendants here in the preparation of the plaintiffs' claim for arbitration and in the pursuit of the discovery proce-

---

76 Conn.App. 137

Robert MORAN

v.

**EASTERN EQUIPMENT SALES, INC., et al.**

No. 22273.

Appellate Court of Connecticut.

Argued Jan. 16, 2003.

Decided April 8, 2003.

Purchaser of wheel loader filed action under state Product Liability Act against seller and manufacturer of loader, seeking recovery for personal injuries sustained while refueling loader. Following a jury trial, the Superior Court, Judicial District of New Haven at Meriden, Levine, J., entered judgment awarding damages to purchaser. Manufacturer appealed. The Appellate Court, Bishop, J., held that: (1) record supported jury's finding that loader was within its safe and useful life at time of injury; (2) issue for jury existed regarding whether proximity of unguarded fan blade to fuel fill was unreasonably dangerous design; (3) issue for jury existed regarding whether manufacturer's failure to warn constituted a defect; (4) purchaser's witness was qualified to testify as an expert concerning design and use of loader; and (5) trial court properly admitted operator's manual and parts catalog as admissions of manufacturer.

Affirmed.

dure before a court order of arbitration was reasonable in terms of the timeliness of the court order of arbitration. Issues such as delay occasioned by no-shows, other attorneys' scheduling problems, unrepresented individuals, motions to withdraw, and the like are not circumstances or issues that laypeople know about or are aware of or have the cognizance to understand and appreciate as to what the law and the Practice Book provide, allow for or restrict."

---

MORA

**Limitation of Action**

Record supported j wheel loader was within life at time of purchase that was caused by conta while refueling loader, ar could bring claim under s ility Act against ma though manufacturer last d more than ten years b brought; evidence indicate lar played no role in inj sign with regard to fan changed from its design c facturer, and figure on loa indicated that loader was normal life expectancy.

C.G.S.A. § 52–577a(c).

**2. Appeal and Error ⟨⟩97**

Proper appellate stan when considering action granting or denying moti verdict is abuse-of-discretio

**3. Limitation of Actions ⟨⟩**

Factors listed in state I y Act that trier of fact m determine product's useful merely guidelines to aid fa thus factors are not stat ments that must be met in action against manufacturer years from time manufactur with possession or contro

C.G.S.A. § 52–577a(c).

**4. Products Liability ⟨⟩90**

Issue for jury existe whether proximity of wheel guarded fan blade to fuel fi sonably dangerous design in state Product Liability Ac brought against manufacturer er who suffered injury when into contact with fan blade wl loader. C.G.S.A. § 52–572m e